Exhibit D

# JOHN T. CLARK AND SON

Contract Stevedores and Marine Terminal Operators

BOSTON FISH PIER, WEST BUILDING, SUITE 304, BOSTON, MA 02210 • 617-330-7810   FAX 617-345-0574
555 MARKET STREET, PORTSMOUTH, NH 03801 • 603-431-8500   FAX 603-427-0771

May 24, 2000

TO WHOM IT MAY CONCERN:

Please be advised that Mr. Stephen Keefe is not a management employee of John T. Clark and Son of Boston, Inc.

Mr. Keefe is employed by our company on a casual basis as a longshoreman working at Conley Container Terminal.

Very truly yours,

JOHN T. CLARK AND SON OF BOSTON, INC.

William P. Horohoe
William P. Horohoe
President

WPH:mcs



ENCLOSURE 16

Page 1

```
                VOL. I
                PAGES 1-124
                EXHIBITS 1-20
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.:   04-CV-11340DPW

* * * * * * * * * * * *

STEPHEN KEEFE,

    PLAINTIFF,

VS

LOCALS 805, INTERNATIONAL

LONGSHOREMEN'S ASSOCIATION,

AFL-CIO, ET. AL,

    DEFENDANTS.

* * * * * * * * * * * * *

    DEPOSITION OF STEPHEN KEEFE, taken on

behalf of the Defendants, pursuant to the

applicable provisions of the Federal Rules of

Civil Procedure, before Bernadette J. D'Alelio,

Notary Public and Court Reporter within and for

the Commonwealth of Massachusetts, at the

Offices of Mullen & McGourty, 52 Temple Place,

Boston, Massachusetts, on May 8, 2006,

at 10:01 a.m., as follows:

Page 38

1   A. Yes.
2   Q. Do you still have your answers to the
3   admissions in front of you?
4   A. Yes.
5   Q. Would you turn to Page 2, please.
6      Do you see request Number 4 where it
7   says, "Rule 37 of the hiring hall work rules
8   for Local 799, 800, and 805 permits a six-month
9   suspension from a gang or steady job for a
10  member's violation of his pledge or due to his
11  failure to appear before the rules committee
12  when summoned."
13     And you admitted that in your answers;
14  is that right? I'm asking you to look at Page
15  2 of the admissions.
16  A. I know.
17  Q. You admitted that to be a correct
18  statement; is that right?
19  A. Yes.
20  Q. And so you also understood when you
21  admitted that in January of 2006 that that
22  admission was referring directly to what we've
23  now marked as Exhibit 5 as the hiring hall
24  rules, right?

Page 39

1   A. Yes.
2   Q. At the bottom of Page 2, Request
3   Number 7 on May 25, 2000, you signed a pledge
4   sheet affirming your compliance with hiring
5   hall rule 36 as it existed in May of 2000, and
6   then you answer "admitted"; is that right?
7   A. Yes.
8   Q. And then in Request Number 8 in May of
9   2000, you signed a pledge with Local 805. You
10  were working exclusively at the craft of being
11  a longshoreman. And you answered "admitted,"
12  is that right, on Page 3?
13  A. Yes.
14     MR. MAHONEY: Mark that as the
15  next exhibit, please.
16     (Exhibit-6, Pledge Dated 5/25/00,
17     marked for identification.)
18     BY MR. MAHONEY:
19  Q. We were just talking about the pledge
20  that you signed in May of 2000. I'm going to
21  show you what we now marked as Exhibit 6 to
22  this deposition and ask if that is the pledge
23  that you signed on May 25, 2000, or a copy of
24  it?

Page 40

1   A. Yes.
2   Q. When you read that, those words on
3   Exhibit Number 6, you understood them; is that
4   right?
5   A. Yes.
6   Q. Otherwise, you wouldn't have signed
7   it, right?
8   A. Yes.
9   Q. You understood the capitalized,
10  underlined phrase "working at this craft
11  exclusively," otherwise you wouldn't have
12  signed it, right?
13  A. Yes.
14  Q. John T. Clark & Son, they're contract
15  stevedores and marine terminal operators, is
16  that right, or they were?
17  A. Yes.
18  Q. What type of work did Local 805 do?
19  A. Union work.
20  Q. Are they stevedores?
21  A. No.
22  Q. They are not. Are they longshoremen?
23  A. Yes.
24  Q. What does a longshoreman do?

Page 41

1   A. A variety of things, unload ships, car
2   jobs.
3   Q. Drive cars off of ships. Anything
4   else?
5   A. Salt jobs.
6   Q. What is a salt job?
7   A. Unload salt passenger ships.
8   Q. A longshoreman works down at the dock
9   at a port, regardless of where it is, right?
10  A. Yes.
11  Q. And could you generally say that a
12  longshoreman is a laborer who will unload all
13  types of cargo from ships that is brought into
14  the port; is that right?
15  A. Yes.
16     MR. MAHONEY: Let's mark this as
17  the next exhibit, please.
18     (Exhibit-7, Letter Dated 5/24/00,
19     marked for identification.)
20     BY MR. MAHONEY:
21  Q. I'm going to show you, Mr. Keefe, what
22  we've marked as Exhibit 7 and ask if you
23  recognize this document?
24  A. Yes.

EX D

Ex 9

Page 42

1  Q. What do you recognize it to be?
2  A. It's a letter from William Horahoa.
3  Q. Who is William Horahoa?
4  A. He is the president of John T. Clark
5  or was the president of John T. Clark.
6  Q. What is the date on the letter?
7  A. May 24th, 2000.
8  Q. Who is the addressee on the letter?
9  To whom it may concern?
10  A. Yes.
11  Q. Now, in May of 2000, Mr. Horahoa
12  indicated that "Mr. Keefe is employed by our
13  company," meaning John T. Clark & Son, "on a
14  casual basis as a longshoreman working at the
15  Conley Container Terminal"; is that correct?
16  A. Yes.
17  Q. Earlier, when you said that your
18  family was taking care of you, had your job
19  duties or responsibilities or any of the work
20  that you did at John T. Clark & Company at any
21  time when you were getting money from them,
22  ever change?
23  A. At any time?
24  Q. Yeah. Why don't I limit the

Page 43

1  question.
2    From 2000 until 2003, did your job
3  duties and responsibilities at John T. Clark &
4  Son change?
5  A. No. I was working out of the hall.
6    MR. MAHONEY: So let's mark the
7  W-2 from 2000 as the next exhibit from John
8  T. Clark. Actually, there is two of them.
9    For the record, we will do 8A as the
10  76,362 one, and we'll do 8B as the 13,585 W-2
11  from 2000.
12    (Exhibit-8A and 8B, W-2s for
13    2000; Exhibits-9A and 9B, W-2s
14    for 2001; Exhibits-10A and 10B,
15    W-2s for 2002, marked for
16    identification.)
17    MR. MAHONEY: For the record,
18  Exhibit 1 contains three documents. One is the
19  W-2 of John T. Clark & Son. 1A, which we are
20  going to mark in a minute, is a W-2 from
21  Columbia Coastal. And then 1C appears to be a
22  copy of the amount of unemployment compensation
23  that the plaintiff received in 2003.
24    So let's mark 1B and 1C.

Page 44

1    (Exhibit-1B, W-2; Exhibit-1C,
2    Unemployment Compensation, marked
3    for identification.)
4  BY MR. MAHONEY:
5  Q. We've already talked about Exhibit 1.
6  Let's talk about Exhibit 1B.
7    What is that, sir?
8  A. Unemployment--
9  Q. A copy of unemployment compensation?
10  A. -- compensation.
11  Q. It appears you received more than
12  $19,000 from the Commonwealth for unemployment
13  compensation; is that right?
14  A. Yes.
15  Q. You applied for that unemployment
16  compensation as a result of being laid off?
17  A. Yes.
18  Q. Who were you laid off by?
19  A. The union.
20  Q. Did you have to list a specific
21  employer?
22  A. P&O Ports, I think.
23  Q. When did you begin to collect
24  unemployment compensation in 2003?

Page 45

1  A. I don't remember. I don't know what
2  month or --
3  Q. All right. Well, if you were
4  suspended in March of '03, would it be fair to
5  infer that you applied for unemployment
6  compensation sometime after March of 2003; is
7  that right?
8  A. I would say yes, but I don't know. I
9  don't know if that is the right date or not.
10  Q. Well, let me try it this way.
11  A. I would have to go back to my records
12  and see.
13  Q. What records are those?
14  A. There is more stuff I have at home for
15  unemployment.
16  Q. You wouldn't have applied for
17  unemployment if you were still working?
18  A. No.
19  Q. And you said a moment ago you applied
20  for unemployment after your suspension from the
21  union; is that right?
22  A. I would say so, yes.
23  Q. With regard to Exhibit 1C, Columbia
24  Coastal, it looks like maybe you got a paycheck