United States District Court
District of Massachusetts

```
Steven Keefe,                    )    Docket No. 04-CV-11340DPW
          Plaintiff              )
                                 )
v.                               )
                                 )
Locals 805, 800, 799,            )
International Longshoremen's     )
Association, AFL-CIO, et.al.     )
          Defendants             )
```

**Defendants', Locals 805, 800, 799, International Longshoremen's Association, AFL-CIO's Statement of Undisputed Facts**

1. The Plaintiff, Stephen Keefe (hereinafter "Keefe"), alleges a violation of the Union Members Bill of Rights (29 U.S.C. § 411 & 529) by the defendants, Locals 805, 800, and 799, International Longshoremen's Association ("ILA"), AFL-CIO. [See Plaintiff's Complaint, hereinafter Exhibit A ("Ex. A")].

2. In 1993, Keefe, a member of Local 1947 of the ILA, moved from New Hampshire to Massachusetts, and became a supervisor in his family-owned stevedore and terminal operating business known as John T. Clark & Sons ("JTC"). [Ex. A].

3. In August of 1998, due to Massport's failure to renew JTC's lease, Keefe requested a transfer of his ILA membership from Local 1947 in Portsmouth, New Hampshire, to Local 805 in East Boston, Massachusetts. [Ex. A].

4. In a letter from the President and Recording Secretary of Local 805, dated November 1, 1998, Keefe was informed that Local 805's executive board had rejected Keefe's transfer request. [Ex. A].

5. After writing Local 805 requesting that they reconsider their decision, in March of 1999, Keefe's attorney wrote directly to President Bowers of the ILA, alleging that Local 805 did not have sufficient reason to deny Keefe's transfer application. [Ex. A].

6. On August 27, 1999, President Bowers directed Local 805 to accept Keefe's transfer request immediately. [Ex. A].

1

7. Having received no response from Local 805, President Bowers appointed a committee to investigate Local 805's denial of Keefe's transfer request.

8. On December 22, 1999, President Bowers notified Local 805 that they had until January 15, 2000 to accept Keefe's transfer or they would face disciplinary action. [Ex. A]. On or about January 15, 2000, Local 805 accepted Keefe's transfer request. [Ex. A].

9. Upon his transfer to Local 805, the ILA Hiring Hall for the port of Boston, Massachusetts, governed Keefe's union-gang placement. [Ex. A]. The ILA Hiring Hall for the Port of Boston was operated jointly by Local 805, 800, and 799 by a Rules Committee composed of nine members, three from each Local. [Ex. A].

10. Following Keefe's initial transfer to Local 805, the Rules Committee placed Keefe in Gang 12. [Ex. A].

11. Gang 12, the lowest and last gang dispatched from the Hiring Hall, consisted primarily of "two jobbers", i.e. Longshoremen who held second jobs and did not work exclusively at the Longshore trade. [Ex. A].

12. Any union member that wished to move from Gang 12 to Gang 11 (or higher), must sign a pledge sheet and appear before the Rules Committee with sufficient proof that they were working exclusively at the craft of Longshoremen. [See Hiring Hall Work Rule #36, and corresponding May 8, 2006 Keefe deposition testimony, hereinafter Exhibit B ("Ex. B")].

13. On May 25, 2000, Keefe signed the Union Pledge Sheet, in which he agreed to work exclusively as a longshoreman, and acknowledged that he had received and was subject to all of the Hiring Hall work rules. [See Locals #799, #800, and #805 I.L.A. Pledge Sheet, and corresponding May 8, 2006 Keefe deposition testimony, hereinafter Exhibit C ("Ex C")].

14. In addition to signing the pledge, the Rules Committee received a letter from the President of JTC indicating that Keefe was employed on a casual basis as a longshoreman by JTC. [See JTC Letter, dated 5/24/00, and corresponding May 8, 2006 Keefe deposition testimony, hereinafter Exhibit D ("Ex D")].

15. Following Keefe's signing of the pledge, in October of 2000, the Rules Committee placed Keefe in Gang 11. [Ex. A].

16. Keefe brought suit in 2001 in the United States District Court, District of Massachusetts, against Locals 805, 800, and 799, in which he alleged, that

        by not initially accepting his application for transfer, the Locals breached Article XV of the ILA Constitution. [Ex. A].

17. On February 6, 2002, counsel of Locals 805, 800, and 799 deposed Keefe in the 2001 litigation. [See Deposition of Stephen Keefe, dated 2/6/02, hereinafter Exhibit E ("Ex. E")]. At this deposition, Keefe admitted that on May 24, 2000, the date that the President of JTC wrote the letter to the Rules Committee on Keefe's behalf, that Keefe was still doing other work in addition to working as a longshoreman for JTC. [Ex E, pg. 53].

18. Nonetheless, subsequent to the February 2002 deposition, in October 2002, Keefe was moved into Gang 10. [Ex. A].

19. On January 7, 2003, counsel for Locals 805, 800, and 799 again deposed Keefe. [Ex. A; see also Deposition of Stephen Keefe, dated 1/7/03, hereinafter Exhibit F ("Ex F")].

20. At this second deposition, Keefe admitted that as of May 24, 2000, through the date of the current deposition (January 7, 2003) that he remained on the JTC payroll for assignments other than longshore work. [Ex F, pg. 10-11].

21. Keefe also admitted that as of January 7, 2003, he continued to receive health insurance from JTC. [Ex F pg. 11].

22. Furthermore, Keefe's W-2s indicated that Keefe was on the JTC retirement plan, and that he reported a total amount of gross wages of $283,704.79 received from JTC for the years 2000 through 2003. [See Keefe's W-2s for the years 2000 through 2003 and corresponding May 8, 2006 Keefe deposition testimony, hereinafter referred to as Exhibit G ("Ex. G")].

23. After learning of Keefe's additional and ongoing employment with JTC, at the end of January 2003, the Rules Committee notified Keefe that it would be conducting a hearing for Keefe to show cause as to why he should not be suspended and placed into Gang 12 for violation of Hiring Hall rule #36. [See Hearing Summons, dated 2/6/03, and corresponding May 8, 2006 Keefe deposition testimony, hereinafter referred to as Exhibit H ("Ex. H")].

24. The summons detailed the specific charges against Keefe, the purpose of the hearing, and the time, date, and location of the hearing. Id.

25. At the May 8, 2006 deposition, Keefe admitted that he received the above-mentioned summons. Id.

26. Due to Keefe's absence at the February 6, 2003 hearing, and thus his failure to show cause, the Rules Committee voted to suspended Keefe for six months, upon which he would then be placed in Gang 12. [See Suspension Letter, and corresponding deposition testimony, hereinafter referred to as Exhibit I ("Ex. I"); see also Hearing Summons, dated March 5, 2003, and corresponding deposition testimony, hereinafter referred to as Exhibit J ("Ex. J")].

27. On February 16, 2003, the Rule Committee sent via certified mail, the suspension letter and summons to Keefe. Id.

28. A certified mail receipt indicates that Keefe received and signed for the above-mentioned suspension letter and hearing summons on February 18, 2003. [See Certified Mail Receipt, dated February 18, 2003, and corresponding deposition testimony hereinafter referred to as Exhibit K ("Ex. K")].

29. Keefe attended the March 5th hearing, at which the Rules Committee voted to reinstate Keefe into Gang 10, conditioned on Keefe supplying the Rules Committee with additional proof that he was working exclusively as a longshoreman. [See Letter from ILA President Bowers to Attorney Lathrop, and corresponding deposition testimony, hereinafter referred to as Exhibit L ("Ex. L")].

30. On March 12, 2003, Keefe was mailed a third summons, ordering him to appear at the March 20, 2003 hearing, where he was to supply any relevant paperwork indicating that he was currently working exclusively as a longshoreman. [See Hearing Summons, dated 2/6/03, hereinafter referred to as Exhibit M ("Ex. M"); see also Ex. L].

31. Due to Keefe's failure to supply the Rules Committee with any documentation to prove he was working exclusively as a longshoreman at the March 20, 2003 hearing, the Rules Committee voted to reinstate Keefe's suspension through August 6, 2003. [Ex. L].

32. Upon the conclusion of Keefe's six-month suspension, he was reinstated and placed into Gang 12 on August 6, 2003, and then placed in Gang 11 on August 10, 2003 [See Defendants Answers and Objections to Plaintiff's Second Set of Interrogatories, pg.5, hereinafter referred to as Exhibit N ("Ex. N")].

33. Prior to the initiation of this lawsuit, the only form of protest Keefe had made to the Rules Committee's suspension was through a letter sent to ILA President Bowers from Keefe's attorney on April 7, 2003. [See Letter from Attorney Lathrop to President Bowers, dated April 7, 2003, and

4

corresponding deposition testimony hereinafter referred to as Exhibit O ("Ex. O")].

34. In response to this letter, President Bowers wrote Attorney Lathrop a detailed letter that explained Keefe's violation of the Hiring Hall Rules, the three hearing notices that were mailed to Keefe, and the Committees subsequent investigation and hearings conducted in regard Keefe's violation. [Ex. L].

35. Article XIX, Section 1 of the ILA Constitution indicates, that prior to bringing a lawsuit against ILA or any local, all union members must first go through proper channels within the union. [See Union Constitution, Article XIX, and corresponding deposition testimony hereinafter referred to as Exhibit P ("Ex. P")].

36. Nonetheless, Keefe has brought suit against Local 805, 800, and 799, alleging that his suspension and the Locals' procedural safeguards were in violation of 29 U.S.C. § 411(a)(4), 29 U.S.C. § 411(a)(5), and 29 U.S.C. § 529. [Ex. A].

Dated: July 31, 2006

Respectfully submitted,
The Defendant,
By their attorney,

Michael L. Mahoney
Mullen & McGourty
52 Temple Place, 4th Floor
Boston, MA 02111
(617) 338-9200
BBO# 557562