Exhibit K

| **SENDER: COMPLETE THIS SECTION** | **COMPLETE THIS SECTION ON DELIVERY** |
|---|---|
| ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>☒ Print your name and address on the reverse so that we can return the card to you.<br>☒ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (Please Print Clearly)　　B. Date of Delivery<br>　　　　　　　　　　　　　　　　2-18-03<br>C. Signature<br>X *Stephen Keefe*　　　　☐ Agent　☐ Addressee<br>D. Is delivery address different from item 1?　☐ Yes<br>　 If YES, enter delivery address below:　☐ No |

1. Article Addressed to:

STephen Keefe
P.O Box 72C
GReen HARbor Ma
02041

|  | 3. Service Type |
|---|---|
| | ☒ Certified Mail　☐ Express Mail<br>☐ Registered　☐ Return Receipt for Merchandise<br>☐ Insured Mail　☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)　　☐ Yes |

2. Article Number (Copy from service label)

7002 2030 0006 6575 9853

PS Form 3811, July 1999　　　　　　Domestic Return Receipt　　　　　　102595-00-M-0952



EXHIBIT 4

Page 1

VOL. I
PAGES 1-124
EXHIBITS 1-20

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.:  04-CV-11340DPW

* * * * * * * * * * * *

STEPHEN KEEFE,

      PLAINTIFF,

VS

LOCALS 805, INTERNATIONAL

LONGSHOREMEN'S ASSOCIATION,

AFL-CIO, ET. AL,

      DEFENDANTS.

* * * * * * * * * * * * *

      DEPOSITION OF STEPHEN KEEFE, taken on

behalf of the Defendants, pursuant to the

applicable provisions of the Federal Rules of

Civil Procedure, before Bernadette J. D'Alelio,

Notary Public and Court Reporter within and for

the Commonwealth of Massachusetts, at the

Offices of Mullen & McGourty, 52 Temple Place,

Boston, Massachusetts, on May 8, 2006,

at 10:01 a.m., as follows:

DUNN & GOUDREAU

b0f77de6-8512-41ab-9233-1851c631ba92

Page 106

1    A.  You would have to talk to my brother.
2  I have nothing to do with that.
3    Q.  Prior to your suspension, do you
4  contend that you weren't given written notice
5  about the specific charges that you were being
6  summoned to by the rules committee?
7    A.  I never received anything from Joe
8  Picard at my post-office box.
9    Q.  Even that letter you signed for, which
10  is marked --
11    A.  This one, I received.  This other
12  stuff -- I've never received anything from Joe
13  Picard.  I received stuff from McGaff.
14    Q.  About what?
15    A.  I don't know what -- I don't know what
16  it was for.
17    Q.  When you went to the rules committee
18  on March 5, to that meeting, why did you go?
19    A.  I was told to go.
20    Q.  By who?
21    A.  By the rules committee.
22    Q.  In what manner were you told, verbally
23  or in writing?
24    A.  In writing.

Page 107

1    Q.  So that would be Exhibit 18; is that
2  right?
3    A.  Yes.
4    Q.  What does Exhibit 18 say?  Can you
5  read that into the record, please?
6    A.  The whole thing?
7    Q.  Yeah.
8    A.  "The Allied rules committee, who are
9  empowered by Rule Number 37 of the hiring hall
10  rules, are hereby notifying you to appear
11  before them.  The committee summons you on this
12  date of March 5, 2003, at 12 noon to appear at
13  the hiring hall.  The purpose of this hearing
14  is for you to show just cause as to why you
15  should not be suspended and placed into Gang
16  12.  Please bring with you any resignation, any
17  retirement papers, tax returns or any other
18  documents that you deem pertinent.  We have
19  found you to be in violation of not honoring
20  the pledge that you signed.  Failure to appear
21  at this hearing could also result in a
22  sanction."
23    Q.  And you got that letter?
24    A.  I think I got that one, yeah.

Page 108

1    Q.  That is what the certified-mail card
2  is?
3    A.  It coincides with that, yes.
4    Q.  In reading Exhibit 18, do you
5  understand what is being stated in that letter?
6    A.  Yeah.
7    Q.  Did you understand it when you read
8  it?
9    A.  Yes.
10    Q.  And you got that on February 18th; is
11  that right?
12    A.  Yup.
13    Q.  That is about two weeks prior to the
14  meeting?
15    A.  Yes.
16    Q.  Do you contend that two weeks' notice
17  is an unreasonable amount of time for you to be
18  summoned to a meeting?
19    A.  No.
20    Q.  When you got into the hearing or the
21  meeting, you waited outside and then you were
22  summoned in; is that right?
23    A.  Yes.
24    Q.  Given what you've read from Exhibit

Page 109

1  18, do you recall any discussion as to what the
2  point of view -- being called to the meeting?
3    A.  I don't remember anything about what
4  they were saying at the meeting.
5    Q.  Did you go with an attorney to the --
6    A.  No.
7    Q.  At the time, Mr. Lathrop was
8  representing you, though, wasn't he?
9    A.  Yeah, I think so, right.  Yeah.
10    Q.  Did you inform the rules committee on
11  March 5, 2005, that you were working for John
12  T. Clark as a consultant?
13    A.  I don't know if I said that.
14    Q.  Did you inform the rules committee, or
15  did you state to the rules committee that they
16  knew of your employment at John T. Clark, yet
17  allowed you to move up from 12 to 11?
18    A.  I don't remember.
19    Q.  If you admitted that you were employed
20  by Clark at that rules committee meeting, do
21  you have any memory of saying you were going to
22  resign your position because you wanted to stay
23  in Gang 10?
24    A.  I don't remember.

DUNN & GOUDREAU

b0f77de6-8512-41ab-9233-1851c631ba92