Exhibit O

Exhibit O

# Scott A. Lathrop & Associates

Scott A. Lathrop, P.C.
Beatrice T. Heveran, Esq.

ATTORNEYS-AT-LAW

slathrop@LathropLawOffices.com
www.LathropLawOffices.com

122 Old Ayer Road
Groton, MA 01450
Phone: (978) 448-8234
Fax: (978) 448-8244

Monday, April 07, 2003

John Bowers
President
International Longshoremen's Association
17 Battery Place, Suite 930
New York, NY 10004-1261



Re: Stephen Keefe & Local 805

Dear Mr. Bowers:

Please be advised that I represent Stephen Keefe, as long-standing member of the International Longshoremen's Association. I am writing to ask the International to intervene in an ongoing problem with Local 805.

As you may recall, in 1999 prior counsel for Mr. Keefe asked the International to investigate the reasons why Local 805 had refused Mr. Keefe's request for a transfer to Local 805. As a result, on May 24, 1999, you wrote to Local 805 asking it to provide in writing the reason for Local 805's refusal. (Exhibit 1 attached hereto).

After receiving and reviewing Local 805's reasons for its refusal, you wrote to Local 805 on August 27, 1999, indicating that it had failed to provide sufficient reason to warrant the denial of Mr. Keefe's transfer of local union membership. You also directed Local 805 to immediately comply or face appropriate disciplinary action. (Ex. 2)

When Local 805 did not comply, on November 17, 1999, you appointed a Committee to conduct a hearing on the matter. (Ex. 3)

On December 28, 1999, the Committee filed its Report in which it recommended that if Local 805 did not admit allow Mr. Keefe to transfer by January 15, 2000, Local 805 should be put in trusteeship. (Ex. 4)

As it occurred, Local 805 did final permit Mr. Keefe to transfer to that Local on or about January 15, 2000. However, since that date Local 805 and its Rules Committee has continued to harass and discriminate against Mr. Keefe by placing him in lower Gangs than he should be. As a result, on February 1, 2001, I filed a complaint on Mr. Keefe's behalf in Federal District Court here in Boston, Massachusetts, against Local 805.

I am writing to you now to apprise you of further harassment and discrimination by Local 805 that we believe is best addressed by your office. Here are the details.

ENCLOSURE 1

SCOTT A. LATHROP, P.C.

On September 29, 2000, the Rules Committee by a vote of 5 to 3 (finally) allowed Mr. Keefe to move from Gang 12 to Gang 11. As the time the Chairman of the Rules Committee asked Mr. Keefe if he had another job. Mr. Keefe's response was that he had only another income like a lot of other Union members here do. Mr. Keefe also signed a social security form that allowed the Rules Committee to investigate whether Mr. Keefe had another job.

Mr. Keefe then spent the next two years in Gang 11. In October, 2002, he moved into Gang 10. The problems start thereafter (when the Federal Court ruled against Local 805).

In February, 2003, the Rules Committee held a meeting about Mr. Keefe's Gang status — without ever informing Mr. Keefe. The Rules Committee suspended Mr. Keefe for six months and put him back in Gang 12 for supposedly having another job. (Mr. Keefe continues to have another income, not another job, and the Rules Committee members know this.)

In March, 2003, the Rules Committee held another meeting. We understand that the Rules Committee did this after being advised that it could not hold a meeting without notifying Mr. Keefe. This time the Committee voted 5 to 3 to put Mr. Keefe back in Gang 10 after a 60 day suspension. Again, the supposed rationale is that Mr. Keefe has another job.

Believe it or not, the Rules Committee then held a third meeting later in March, 2003. Mr. Keefe was not given any notice of this meeting. And it is our understanding that this meeting was called at a time when persons who had voted previously for Mr. Keefe would be out of town. Not surprisingly, the "rump" Rules Committee again suspended Mr. Keefe for 6 months and put him back in Gang 12.

We protest this continuing form of harassment and retaliation. We ask that the International investigate this matter, especially inasmuch as the Rules Committee, including the current Chairman of the Rules Committee and his relatives, have other jobs and incomes (such as family businesses, rental income, pensions and cash paying jobs) while still enjoying the benefits of Gangs 1 - 9.

Thank you in advance for your attention to this matter.

Very truly yours,

Scott A. Lathrop

cc: Stephen Keefe

2

Page 1

VOL. I
PAGES 1-124
EXHIBITS 1-20

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.: 04-CV-11340DPW

* * * * * * * * * * * * *

STEPHEN KEEFE,

    PLAINTIFF,

VS

LOCALS 805, INTERNATIONAL

LONGSHOREMEN'S ASSOCIATION,

AFL-CIO, ET. AL,

    DEFENDANTS.

* * * * * * * * * * * * *

    DEPOSITION OF STEPHEN KEEFE, taken on
behalf of the Defendants, pursuant to the
applicable provisions of the Federal Rules of
Civil Procedure, before Bernadette J. D'Alelio,
Notary Public and Court Reporter within and for
the Commonwealth of Massachusetts, at the
Offices of Mullen & McGourty, 52 Temple Place,
Boston, Massachusetts, on May 8, 2006,
at 10:01 a.m., as follows:

DUNN & GOUDREAU

Page 118

1  you know if it is kept at the union hall or any
2  other building?
3     A. The last time I saw a constitution was
4  from 1998 or something, '94.
5     Q. That was before you were a member of
6  805, right?
7     A. (Witness nodding.)
8     Q. Prior to being a member of 805, you
9  were a member of another longshoremen's union,
10 weren't you?
11    A. Yes.
12    Q. That was up in Portsmouth, New
13 Hampshire?
14    A. Yes.
15    Q. What local was that?
16    A. Local 1947.
17    Q. Had you ever been summoned before the
18 rules committee or any hearing officer in 1947
19 while you were a member there?
20    A. Not that I recall. I don't think they
21 had a rules committee.
22    Q. Prior to filing this litigation, Civil
23 Action Number 0411340, did you pursue an appeal
24 of the rules committee's decision with the

Page 119

1  union?
2     A. For my suspension?
3     Q. Yes.
4     A. I didn't know I could appeal.
5     Q. On April 7, 2003, your attorney wrote
6  a letter to Mr. Bowers, the president of the
7  international; is that right?
8     A. Yes.
9     Q. And that letter was a complaint made
10 on your behalf to Mr. Bowers about your
11 suspension; is that right?
12    A. Yes.
13    Q. Prior to that letter being sent to
14 Mr. Bowers, had you pursued any appeal within
15 the union, either to the district council or
16 any other body in accordance with the
17 constitution?
18    A. I didn't know you could.
19    Q. Prior to filing this civil action, had
20 you pursued any appeal of your suspension
21 within the union, either to the district
22 council or any other body pursuant to the
23 constitution?
24    A. Say that again, please?

Page 120

1         MR. MAHONEY: Can you read that
2  back, please, Bernadette?
3         (Question read.)
4     A. I didn't know you could.
5     Q. Do you recall when we were talking
6  about Exhibit 5 earlier, which are the hiring
7  hall rules?
8     A. Yes.
9     Q. We were previously talking about the
10 hiring hall rules in regard to the pledge
11 sheet. Do you recall that?
12    A. Yes.
13    Q. What I want to focus your attention
14 now on is Rule 25. You t
15       Tell me if I read this incorrectly. I
16 will try to do it upside down.
17       "All members who have a grievance must
18 go through proper channels first before
19 bringing a lawsuit against the ILA or any
20 local."
21       Did I read that correctly?
22    A. Yes.
23    Q. "(The channels are as follows: First,
24 they must go through their local; next, New

Page 121

1  England Dock & Marine Council or Atlantic
2  District Council; and then the international.)"
3        Did I read that correctly?
4     A. Yes.
5     Q. And these are the hiring hall rules
6  that were in effect in 2003 at the time of your
7  suspension; isn't that right?
8     A. Yes.
9     Q. And prior to filing this lawsuit, did
10 you make any request to the New England Dock &
11 Marine Council or the Atlantic District Council
12 appealing your suspension?
13    A. I never read that rule. I didn't know
14 I could. If I did, I would have went that
15 avenue.
16    Q. Your attorney did write to the
17 president; is that right?
18    A. Yes.
19    Q. And you received Mr. Bowers' response,
20 the president's response, in December 2003;
21 isn't that right?
22    A. Yes.
23    Q. And was it after you received
24 President Bowers' response that you then filed

31 (Pages 118 to 121)