Exhibit P



Constitution
and
RULES OF ORDER
of the
INTERNATIONAL
LONGSHOREMEN'S
ASSOCIATION,
AFL-CIO

As amended at the 50th Convention,
held in Orlando, Florida
July 19-22, 1999

given notice pursuant to the provisions of this Article, to appear thereat.

**Section 6.** Appeals from decisions rendered pursuant to the provisions of this Article may be taken in the manner provided herein by the accused or by the person filing the charge.

**Section 7.** A member who has been expelled from the I.L.A. pursuant to the provisions of this article may be reinstated to membership by the body which expelled him. The Executive Council may condition the reinstatement of an expelled member by such limitations or conditions as it may prescribe.

## ARTICLE XIX
### APPEALS

**Section 1.** Appeals may be taken from any decision made under Article XVIII and from any action, failure to act or decision in the exercise of the original or appellate jurisdiction provided for in this Constitution:

(a) Of an officer of a local union, to the Executive Board of such local union;

(b) Of the Executive Board of a local union, to a membership meeting of such local union, whose decision shall be made by a majority of those present and voting on the question;

(c) Of a membership meeting of a local union, to the district council (if any) with which it is affiliated, or (if not affiliated with a district council) to the district organization;

(d) Of any district council, officer or District Council Executive Board, to the district organization, whose decision under this clause and under clause (c) shall be made by a majority of the delegates present and voting on the question of a meeting thereof;

42

(e) Of any district organization or International Officer, or the International Executive Officers, to the Executive Council;

(f) Of the Executive Council to the Convention.

**Section 2.** An appellate body specified in Section 1 of this Article may hear and determine an appeal filed with it notwithstanding the fact that such appeal has not first been submitted to or decided by a subordinate appellate body pursuant to the provisions of Section 1 of this Article, in which event the subordinate appellate body shall not act upon the appeal; provided that no appeal shall be taken to the convention unless it has first been submitted for decision to the Executive Council.

**Section 3.** All appeals shall be in writing, shall contain a brief statement of the facts and the grounds for the appeal and shall be filed with the secretary of the body to which they are addressed within thirty days, or such longer period as such body may permit, after the rendition of the decision from which the appeal is taken. The secretary with whom the appeal is filed shall promptly transmit copies thereof, together with a notice of the date of hearing thereon, which shall be held not less than five (5) days from the date of the notice, to the parties to the appeal. The provisions of Section 4 and 5 of Article XVIII (except the right of the accused to produce and cross examine witnesses) providing for the procedure on hearing on charges shall apply to hearings on appeals taken under this Article.

**Section 4.** An appeal taken under this Article shall not operate to stay the action or decision appealed from unless the body to which the appeal is taken shall so order.

**Section 5.** No member or local union shall institute any civil action, suit, or proceeding in any court

43

against the I.L.A., any of its local unions, or district council or district organization, or any officer or member of the I.L.A. or of any of its local unions or district council or district organization on account of any controversy for which a remedy by trial or appeal is provided for in this Constitution, unless and until he has first exhausted all such remedies of trial and appeal. The prohibition contained herein shall not extend beyond four (4) months from the date that a member or local union initiates a controversy by filing with the proper individual.

**Section 6.** Whenever a decision is initially made, other than by the Executive Council or the Convention, an appellant, seeking to exhaust his remedies in accordance with the provisions of Section 5 of this Article, shall, notwithstanding the pendency of any intermediate appeals, file an appeal with the Executive Council within ninety (90) days after having been served with a copy of the decision appealed from. If no Regular or Special Convention of the I.L.A. is held before the expiration of four (4) months of the date of the decision appealed from, the decision of the Executive Council on appeal shall be final and binding. If a Regular or Special Convention of the I.L.A. is held before the expiration of four (4) months of the date of the decision appealed from, then the final appeal must be taken to such Regular or Special Convention and its decision shall be final and binding, provided however, that in all such cases appeals must first be taken to the membership of a local union and then to the Executive Council. If such convention is held so close to the date of the decision appealed from as to preclude intermediate appeals such appeal must be taken to the Executive Council and finally to the Convention.

44

# ARTICLE XX
## PROTEST OF ELECTION OF OFFICERS

**Section 1.** The procedure to protest the election of local officers shall be as follows:

(a) Any member of the local wishing to object to the election of any local officer may file a protest to the election. The protest must be filed within ten (10) days after the conclusion of the election and must be filed with the Secretary-Treasurer of the local. The protest must be in writing and specify the reasons for the protest.

(b) The Executive Board of the local shall hear the protest, giving all parties the opportunity to be heard and present evidence, and the Executive Board shall make the determination.

(c) The party against whom the protest is resolved shall have the right to appeal to the Executive Board of the District. A written notice of appeal must be filed within ten (10) days after the notice of the decision of the Local's Executive Board. The appeal must be filed with the Secretary-Treasurer of the District. The losing party at the district level shall have a further right to appeal to the International Executive Council. He must file a written appeal with the International Secretary-Treasurer within then (10) days of notice of the decision of the Executive Board of the District. The decision of the Executive Council shall be final and binding.

**Section 2.** The procedure to protest the election of district officers shall be as follows:

(a) Any member may protest the election of any district officer. The protest must be filed within ten (10) days after the conclusion of the election of the district officers and it must be filed with the District Secretary-Treasurer who held office at the time of the elections. The protest must be in writing and state the reasons for the protest.

45

Page 114

1   A.  I don't think so.
2   Q.  Exhibit 18 asks that you bring
3 resignation and, slash, retirement papers, tax
4 returns or any documents that you deem
5 pertinent.
6       And you told me that you later brought
7 this Exhibit Number 3. Apparently, you deemed
8 this as pertinent; is that right?
9   A.  They told me to bring that.
10  Q.  I apologize if I asked you this
11 earlier.
12      How did you get this document?
13  A.  I went to the social security office.
14  Q.  Where is that?
15  A.  In Hanover.
16  Q.  And they printed this out for you?
17  A.  Yes.
18  Q.  Mr. Keefe, given that there is a date
19 that is sort of cut off at the top of Exhibit
20 3, which appears to be August 17, 2004, do you
21 have a memory of whether or not you got this
22 document from the social security office in
23 Hanover after you had already been reinstated?
24  A.  I got it this date. I don't know what

Page 115

1 date I was reinstated. I think that was the
2 date that I would have got it.
3   Q.  All right. In the last ten years,
4 have you ever been convicted of a felony?
5   A.  Yes.
6   Q.  What was that --
7   A.  No, not ten years.
8   Q.  This is 2006. Since 1996 have you
9 ever been convicted of a felony?
10  A.  No.
11  Q.  Since 2001 have you been convicted of
12 a misdemeanor?
13  A.  Like what, traffic or something?
14  Q.  A misdemeanor would be district court
15 summons; felony would be a superior court
16 summons, criminal.
17  A.  Misdemeanor, no.
18  Q.  Are you certain of that in the past
19 five years, no misdemeanors, convictions?
20  A.  I don't think so.
21  Q.  When is the last time that you were in
22 court for any reason?
23  A.  I was in court 20 years ago, '86, I
24 think.

Page 116

1       MR. LATHROP: You mean civil
2 also?
3       MR. MAHONEY: Yeah, any reason
4 whatsoever.
5       BY MR. MAHONEY:
6   Q.  Last time you were in court was it
7 this trial, the trial from the other case?
8   A.  Yes.
9   Q.  Prior to that, when was the last time
10 you had been in a courthouse?
11      MR. LATHROP: Your last question
12 was in a courthouse. A court procedure --
13  A.  With somebody else or for me?
14  Q.  For yourself.
15  A.  The last time I remember was 1986, I
16 think.
17  Q.  In 2003 do you have any understanding
18 of any appeals process that you could pursue if
19 you thought that you were being treated
20 unfairly by the union?
21  A.  No. Other than Brighton, New York, or
22 going to the international.
23  Q.  Have you ever had any conversation
24 with any of the Consadines about your case?

Page 117

1   A.  No.
2   Q.  Have you ever had any conversation
3 with Dan O'Brien about your case?
4   A.  No.
5   Q.  John McLaughlin?
6   A.  No.
7   Q.  Mike McAvoy?
8   A.  No.
9   Q.  What about William Coachie, have you
10 ever had any conversation with him?
11  A.  No.
12      MR. MAHONEY: Let's take a
13 break. I may be finished.
14      (Brief break.)
15      BY MR. MAHONEY:
16  Q.  Mr. Keefe, when you became a member of
17 805, did you receive a copy of the
18 constitution.
19  A.  Constitution?
20  Q.  Yeah.
21  A.  No.
22  Q.  Do you have any understanding of the
23 availability of the Constitution of the
24 International Longshoremen's Association? Do

30 (Pages 114 to 117)

DUNN & GOUDREAU

VOL. I
PAGES 1-124
EXHIBITS 1-20

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.: 04-CV-11340DPW

* * * * * * * * * * * *

STEPHEN KEEFE,

    PLAINTIFF,

VS

LOCALS 805, INTERNATIONAL

LONGSHOREMEN'S ASSOCIATION,

AFL-CIO, ET. AL,

    DEFENDANTS.

* * * * * * * * * * * * *

    DEPOSITION OF STEPHEN KEEFE, taken on

behalf of the Defendants, pursuant to the

applicable provisions of the Federal Rules of

Civil Procedure, before Bernadette J. D'Alelio,

Notary Public and Court Reporter within and for

the Commonwealth of Massachusetts, at the

Offices of Mullen & McGourty, 52 Temple Place,

Boston, Massachusetts, on May 8, 2006,

at 10:01 a.m., as follows:

Page 118

```
 1  you know if it is kept at the union hall or any
 2  other building?
 3      A.  The last time I saw a constitution was
 4  from 1998 or something, '94.
 5      Q.  That was before you were a member of
 6  805, right?
 7      A.  (Witness nodding.)
 8      Q.  Prior to being a member of 805, you
 9  were a member of another longshoremen's union,
10  weren't you?
11      A.  Yes.
12      Q.  That was up in Portsmouth, New
13  Hampshire?
14      A.  Yes.
15      Q.  What local was that?
16      A.  Local 1947.
17      Q.  Had you ever been summoned before the
18  rules committee or any hearing officer in 1947
19  while you were a member there?
20      A.  Not that I recall. I don't think they
21  had a rules committee.
22      Q.  Prior to filing this litigation, Civil
23  Action Number 0411340, did you pursue an appeal
24  of the rules committee's decision with the
```

Page 119

```
 1  union?
 2      A.  For my suspension?
 3      Q.  Yes.
 4      A.  I didn't know I could appeal.
 5      Q.  On April 7, 2003, your attorney wrote
 6  a letter to Mr. Bowers, the president of the
 7  international; is that right?
 8      A.  Yes.
 9      Q.  And that letter was a complaint made
10  on your behalf to Mr. Bowers about your
11  suspension; is that right?
12      A.  Yes.
13      Q.  Prior to that letter being sent to
14  Mr. Bowers, had you pursued any appeal within
15  the union, either to the district council or
16  any other body in accordance with the
17  constitution?
18      A.  I didn't know you could.
19      Q.  Prior to filing this civil action, had
20  you pursued any appeal of your suspension
21  within the union, either to the district
22  council or any other body pursuant to the
23  constitution?
24      A.  Say that again, please?
```

Page 120

```
 1          MR. MAHONEY:  Can you read that
 2  back, please, Bernadette?
 3          (Question read.)
 4      A.  I didn't know you could.
 5      Q.  Do you recall when we were talking
 6  about Exhibit 5 earlier, which are the hiring
 7  hall rules?
 8      A.  Yes.
 9      Q.  We were previously talking about the
10  hiring hall rules in regard to the pledge
11  sheet.  Do you recall that?
12      A.  Yes.
13      Q.  What I want to focus your attention
14  now on is Rule 25.  You t
15          Tell me if I read this incorrectly.  I
16  will try to do it upside down.
17          "All members who have a grievance must
18  go through proper channels first before
19  bringing a lawsuit against the ILA or any
20  local."
21          Did I read that correctly?
22      A.  Yes.
23      Q.  "(The channels are as follows:  First,
24  they must go through their local; next, New
```

Page 121

```
 1  England Dock & Marine Council or Atlantic
 2  District Council; and then the international.)"
 3          Did I read that correctly?
 4      A.  Yes.
 5      Q.  And these are the hiring hall rules
 6  that were in effect in 2003 at the time of your
 7  suspension; isn't that right?
 8      A.  Yes.
 9      Q.  And prior to filing this lawsuit, did
10  you make any request to the New England Dock &
11  Marine Council or the Atlantic District Council
12  appealing your suspension?
13      A.  I never read that rule.  I didn't know
14  I could.  If I did, I would have went that
15  avenue.
16      Q.  Your attorney did write to the
17  president; is that right?
18      A.  Yes.
19      Q.  And you received Mr. Bowers' response,
20  the president's response, in December 2003;
21  isn't that right?
22      A.  Yes.
23      Q.  And was it after you received
24  President Bowers' response that you then filed
```