UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11340 DPW

```
*********************************************
STEPHEN KEEFE,                              *
    Plaintiff                               *
                                            *
    v.                                      *
                                            *
LOCAL 805, INTERNATIONAL                    *
LONGSHOREMEN'S ASSOCIATION, AFL-CIO,        *
LOCAL 800, INTERNATIONAL                    *
LONGSHOREMEN'S ASSOCIATION, AFL-CIO,        *
and LOCAL 799, INTERNATIONAL                *
LONGSHOREMEN'S ASSOCIATION, AFL-CIO,        *
    Defendants                              *
*********************************************
```

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stephen Keefe hereby opposes the Defendants' Motion for Summary Judgment.

**I.      Background**

This is an action for violation of the Union Members Bill of Rights (29 U.S.C. §§411 & 529).

On or about February 1, 2001, Keefe, had brought suit in United States District Court, District of Massachusetts, against Locals 805, 800 and 799 of the International Longshoremen's Association, in C.A. No. 01-10194, alleging, <u>inter alia</u>, that by not accepting Keefe's application for membership on or near August 10, 1998, the Locals breached Article XV of the ILA Constitution in breach of 29 U.S.C. §185.

1

In March, 2003, the Rules Committee for the defendant Locals suspended Keefe for 6 months and put him back in Gang 12 after he had been in Gang 10. Its rationale was that Keefe purportedly was not working exclusively at the craft.

Keefe has alleged in this suit that the Rules Committee suspended him and then put him back in Gang 12 in retaliation for Keefe having previously brought suit against Locals 799, 800 and 805. (Complaint, ¶ 38)

Keefe has alleged that Members of the Rules Committee, including the current Chairman of the Rules Committee, have other jobs and incomes while still enjoying the benefits of Gangs 1-9. Other Union members also have other jobs and incomes while still enjoying the benefits of Gangs 1-9. (Complaint, ¶¶ 36-37)

Finally, Keefe has also alleged that the Rules Committee disciplined him without serving him with written specific charges, giving him a reasonable time to prepare his defense, and affording him a full and fair hearing. (Complaint, ¶ 39)

## II.   Statement of Facts [1]

Rule 36 of the Hiring Hall Work Rules provides that: "If a member wishes to move from gang 12 to gang 11, they must sign a pledge sheet and appear before the Rules Committee. They must bring sufficient proof that they are working exclusively at the craft, such as a notarized statement or resignation papers, tax returns or any other documents that are pertinent. The burden of proof rests with the bargaining unit member." (Ex. 1: Picard Dep. Ex. 1)

---

[1] Record citations are to the exhibits attached hereto. Many of the facts cited herein are in dispute. Given that defendants have filed a motion for summary judgment, the facts are stated in the light most favorable to the plaintiff.

On May 25, 2000, Keefe signed a standard pledge to the Defendants that he was "available to the Longshore industry on a full-time basis and <u>WORK AT THIS CRAFT EXCLUSIVELY.</u>" [emphasis in original] (Ex. 2: Keefe Dep. Ex. 6)

In the prior law suit the Defendants first took Keefe's deposition on February 6, 2002. During that deposition Keefe testified to the following: At one point in time he did do the payrolls for John T. Clark & Sons. However, he stopped doing that work about 18 months prior to that deposition. Keefe was then no longer performing any work other than long-shore work for John T. Clark. (Ex. 3: Keefe Dep. Vol. I, P. 11-12) Specifically, Keefe had stopped doing other work as of May 25, 2000, for John T. Clark & Sons, other than longshore work. (Ex. 3: Keefe Dep. Vol. I, P. 54) Gang 12 consisted of the so called two jobbers, members of Local ILA 805, Local 800, and Local 799 who did not work exclusively at the long shore craft. (Ex. 3: Keefe Dep. Vol. I, P. 32) Keefe was admitted to Gang 11 on October 3, 2000. (Ex. 3: Keefe Dep. Vol. I, P. 65)

In the prior lawsuit the Defendants further deposed Keefe on January 7, 2003. During that deposition Keefe testified to the following: While Keefe had not performed any work for John T. Clark, other than longshore work, since May 25, 2000, he was still on the office payroll and was "available to do work as it's assigned to [him] by John T. Clark." (Ex. 4: Keefe Dep. Vol. II, P. 10-11)

Within days, on January 18, 2003, Joseph Picard, the Chairman of the Rules Committee, mailed a summons to Keefe to appear at a Committee Meeting on February 6, 2003. The summons stated that the purpose of the hearing was to show just cause as to why Keefe should not be suspended and placed into Gang 12. Picard sent this by regular mail. (Exs. 5, 6: Picard

Dep. Exs. 3, 4)

Keefe did not receive notice of this meeting. (Ex. 7: Plaintiff's Answers to Defendants' Request for Admissions, Nos. 29, 31; Ex. 8: Keefe Dep. Vol. III, p. 22)

On February, 2003, the Rules Committee held a meeting about Keefe's Gang status. Keefe did not attend. The Rules Committee suspended Keefe for six months and then effective August 6, 2003, put him back in Gang 12 for supposedly violating Rule # 36.[2] (Exs. 5, 9: Picard Dep. Exs. 3, 5)

On February 16, 2003, Picard mailed a suspension letter and summons to Keefe to appear at the next Rules Committee meeting on March 5, 2003. This time Picard sent the documents by certified mail. (Exs. 5, 9, 10, 11: Picard Dep. Exs. 3, 5, 6, 7) Picard has testified that the Rules Committee sent out this certified notice: "Because we wanted to talk to him and see if he had another job." (Ex. 12: Picard Dep. P. 44)

Keefe attended the March 5, 2003, Rules Committee meeting. (Ex. 5: Picard Dep. Ex. 3) As admitted by a member of the Rules Committee, Keefe told the Rules Committee that he had another income and that he wasn't working another job. (Ex. 13: McGaffigan Dep. P. 15) According even to Picard, Keefe said that he had a no-show job with his brother's company [which was John T. Clark.] (Ex. 12: Picard Dep. P. 71) The Committee voted to possibly reinstate Keefe into Gang 10 before April 1, 2003, but Keefe had to bring in more proof that he did not violate the Rule. (Ex. 5: Picard Dep. Ex. 3)

On March 12, 2003, Picard mailed Keefe a summons to appear at the next monthly Rules

---

[2] In the notice, Picard listed it as Rule # 37. In his deposition he corrected it to be Rule # 36. (Ex. 12: Picard Dep. P. 41)

Committee meeting on March 20, 2003. Picard sent it by regular mail. (Exs. 5, 14: Picard Dep. Exs. 3, 8)

Keefe did not receive any notice of this March 20, 2003, meeting. (Ex. 7: Plaintiff's Answers to Defendants' Request for Admissions, Nos. 40, 41)

On March 20, 2003, the Rules Committee met again. A motion was passed to rescind the vote taken on March 5, 2003, and to hold that Keefe had violated Rule 36. Keefe was not in attendance at this meeting. As a result Keefe was suspended for six months, at the end of which time he was put back in Gang 12. (Ex. 5: Picard Dep. Ex. 3)

During the current lawsuit, the Defendants on May 8, 2006, took Keefe's deposition for a third time. During that deposition Keefe testified to the following: Keefe's brothers were the owners of John T. Clark & Son Company. (Ex. 8: Keefe Dep. Vol. III, P. 13) John T. Clark & Sons was not in business in 2004, and Keefe had not received even an income from them since 2004. (Ex. 8: Keefe Dep. Vol. III, P. 10, 26) When John T. Clark was still in business, Keefe didn't have any responsibilities. He worked zero hours a week at John T. Clark. (Ex. 8: Keefe Dep. Vol. III, P. 11-12) He received an income from John T. Clark because his family was taking care of him. (Ex. 8: Keefe Dep. Vol. III, P. 12) In May, 2000, Mr. Horahoe on behalf of John T. Clark had accurately indicated in writing that: "Mr. Keefe is employed by our company on a casual basis as a longshoreman working at the Conley Container Terminal." (Ex. 8: Keefe Dep. Vol. III, P. 42.) After his suspension, Keefe was placed back in Gang 12 on August 6, 2003. (Ex. 8: Keefe Dep. Vol. III, P. 50) With regard to his appeal rights, Keefe understood that if he that if he thought that he was being treated unfairly by the union, he could go to the international. (Ex. 8: Keefe Dep. Vol. III, P. 116)

Joseph J. Picard, Jr., has been on the Rules Committee for the last ten years. (Picard Dep. P. 12) Picard had been the chairman of the Rules Committee from 2001 to 2004. (Ex. 12: Picard Dep. P. 14) Picard understands that Hiring Hall Rule 36 talks about working exclusively at the craft. It does not talk about having another income. (Ex. 12: Picard Dep. P. 18) In Picard's opinion, one would not be working exclusively at the craft if one worked for somebody and got paid for it or was self-employed. (Ex. 12: Picard Dep. P. 19)

However, in addition to being a Longshoreman, Picard himself is involved in the building and construction business. Picard buys a piece of property, builds a house on it and then sells or rents it. (Ex. 12: Picard Dep. P. 20) For example, Picard bought 238 Breman Street, East Boston. (Ex. 12: Picard Dep. P. 20) It is a three-family. Picard rehabbed it himself, fixed up the bathroom and kitchens. (Ex.12: Picard Dep. P. 21) He also fixed the gutter, put some new windows in and painted it. (Ex. 12: Picard Dep. P. 22) Now he rents it out and continues to do the maintenance work on the house. (Ex. 12: Picard Dep. P. 23) Picard did this while on the Rules Committee. (Ex. 12: Picard Dep. P. 22)[3]

The only person who has been suspended while Picard was on the Rules Committee was Keefe. (Ex. 12: Picard Dep. P. 35) In fact, other that Keefe, no one has been disciplined under this rule since 1998. (Ex. 15: Defendants' Answers to Interrogatories, No. 9)

Brendan Lee graduated from New England School of Law in 1994. (Ex. 16: Lee Dep. P. 6) He has been a member of Local 800 since 1989 or 1990. (Ex. 16: Lee Dep. P. 6) Atty. Lee has been a member of Gang 8 since approximately December, 2004. (Ex. 16: Lee Dep. P. 7) He

---

[3] For what it is worth, Picard was indicted on or about August 9, 2006, along with 20 other longshoremen for payroll fraud. Boston Globe, August 10, 2006.

moved into Gang 9 in either 2001 or 2002. (Ex. 16: Lee Dep. P. 8) He was in Gang 10 in approximately 2002. He moved into Gang 11 in either 2000 or 2001. (Ex. 16: Lee Dep. P. 8) In his deposition, Atty. Lee claimed not to have done any legal work for any compensation since 2001. (Ex. 16: Lee Dep. P. 10)[4]

In fact, between the years 2001 and 2006 Atty. Lee has been paid approximately $60,000 each year by the Committee for Public Counsel Services for his services as a bar advocate. (Ex. 17: A. Benedetti sworn statement) Furthermore, Atty. Lee is even openly listed in Lawyer's Diary. (Ex. 18: 2006 Lawyer's Diary) Yet, despite this open practice of law, the Defendants have not disciplined or suspended Atty. Lee.

On April 7, 2003, Keefe's counsel wrote the International Union President a letter raising the same allegations that are asserted in this current court complaint and requesting an investigation. (Ex. 19: Keefe Dep. Ex. 13) Over eight months later, on December 11, 2003, the International Union President reported the findings of the International Union's investigation and rejected Keefe's claims. (Ex. 20: Keefe Dep. Ex. 14).

III. **Argument**

    A. **There Is No Requirement Under 29 U.S.C. § 529 To Exhaust Internal Union Remedies.**

Keefe's primary allegation is that the Rules Committee suspended Keefe and then put him back in Gang 12 in retaliation for Keefe having previously brought suit against Locals 805, 800 and 799. (Complaint, ¶ 38) If true, this would be a violation of 29 U.S.C. § 529, which provides

---

[4] For what it is worth, Lee was indicted on or about August 9, 2006, along with 20 other longshoremen for payroll fraud. Boston Globe, August 10, 2006.

as follows:

> "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 [29 U.S.C. § 412] shall be applicable in the enforcement of this section."

Under this Act – the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 et seq. – one of the rights to which Keefe is entitled is the right to sue. Specifically, 29 U.S.C. § 411(a)(4) provides that:

> "(4) Protection of the right to sue. No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."

As stated directly in § 529, retaliation claims are enforced through the application of the "provisions of section 102 [29 U.S.C. § 412]."

Contrary to Defendants' implication, 29 U.S.C. § 412, unlike other provisions of the Labor-Management Reporting and Disclosure Act, does not require a plaintiff to exhaust internal union remedies. It states in its entirety:

> "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

Thus, in order to enforce his rights against retaliation under § 529, Keefe is entitled to bring a civil action in district court. Section 412 does not mention or require that a plaintiff first exhaust internal union remedies.

### B.  The Failure To Exhaust Internal Union Remedies Is An Affirmative Defense, Which The Defendants Did Not Plead.

The claim that a plaintiff failed to exhaust internal union remedies is an affirmative defense on which a defendant bears the burden of proof. See, e.g., Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 75 (1998); Clayton v. International Union, 451 U.S. 679, 683-684 (1981); Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 444-445 (2nd Cir. 2006); Briggs & Stratton Corp. v. Local 232, International Union, Allied Industrial Workers of America,36 F.3d 712, 721 (7th 1994); Walk v. P*I*E Nationwide, Inc., 958 F.2d 1323, 1325 (6th Cir. 1992); Held v. Manufacturers Hanover Leasing Corp. , 912 F.2d 1197, 1206 (10th Cir. 1990) Doty v. Sewall, 908 F.2d 1053, 1061 (1st Cir. 1990); Lynn v. Sheet Metal Workers' International Assoc., 804 F.2d 1472, 1482 (9th Cir. 1986); White v. Bell Atl. Yellow Pages, 2004 U.S. Dist. LEXIS 4720, *38 (D. Ma. 2004).

Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." And affirmative defenses are subject to waiver if not timely pleaded. An affirmative defense must be pleaded in the answer in order to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense. Wolf v. Reliance Standard Life Insurance Co.,71 F.3d 444, 449 (1st Cir. 1995)

In answering the Complaint in this case the Defendants never raised the affirmative

defense of failure to exhaust internal union remedies. (Ex. 21: Defendants' Answer)  Therefore the Defendants have waived that defense.

      C.      **In Any Case Plaintiff Sought Intra-Union Remedies For Over Four Months.**

Even if the Defendants had not waived the affirmative defense of failure to exhaust internal union remedies, the Defendants would still not be able to meet their burden of proof on that issue inasmuch as Keefe did seek intra-union remedies for over four months before he filed the instant lawsuit.

Section 101(a)(4) of the Act, 29 U.S.C. § 411(a)(4), while not itself imposing an obligation on union members to exhaust intra-union remedies, does allow a union to impose an exhaustion requirement of four months' duration. Doty v. Sewall, supra at 1061, n. 6.

Furthermore, even if a plaintiff did not follow precisely all the procedures specified by the union, a concentrated effort to comply with the spirit of intraunion remedies available will satisfy § 411(a)(4)'s exhaustion requirement.  Doty v. Sewall, supra at 1061, n. 7.

In the instant case Keefe spent over four months seeking intraunion remedies with regard to the instant complaint, but he obtained no relief.  Only thereafter did he file the instant lawsuit.  Interestingly, this is all detailed in the Defendants' Answer to the Complaint.

As stated in the Defendants' Answer, on April 7, 2003, Keefe's counsel wrote the International Union President a letter raising the same allegations asserted in the current court complaint and requesting an investigation. (Ex. 21: Defendants' Answer, ¶ 46; Ex.19: Keefe Dep. Ex. 13).  According to the Defendants in their Answer, the International Union conducted a detailed and thorough review of the letter's allegations. (Ex. 21: Defendants' Answer, ¶ 47).

Over eight months later, on December 11, 2003, the International Union President reported the findings of the International Union's investigation and rejected Keefe's claims. (Ex. 21: Defendants' Answer, ¶¶ 48-49; Ex. 20: Keefe Dep. Ex. 14).

On or about June 16, 2004, Keefe filed the instant complaint.

Hence Keefe, by the Defendants' own acknowledgment, sought out intraunion remedies for well in excess of four months before he filed the instant lawsuit.

      **D.     Keefe Has Presented Evidence That The Rules Committee Suspended Him And Put Him Back In Gang 12 In Retaliation For Keefe Having Brought Suit Against The Defendants.**

Keefe has presented evidence that the Rules Committee suspended him and put him back in Gang 12 in retaliation for his having previously brought suit against the Defendants. Contrary to the Defendants' assertion in their Memorandum (p. 10), suspensions have not been applied consistently to anyone found violating the Hiring Hall Rules.

Rule 36 of the Hiring Hall Work Rules provides that a member must be "<u>working</u> exclusively at the craft." (Ex. 1: Picard Dep. Ex. 1) [emphasis added] The Rule does not say anything about income, earned or unearned. It speaks only of "working." Indeed even the pledge sheet that Keefe signed shows that the purpose of this rule is to make sure that members are available "full-time" to work as a longshoreman. It states that Keefe was "available to the Longshore industry on a full-time basis and <u>WORK AT THIS CRAFT EXCLUSIVELY</u>." [emphasis in original] (Ex. 2: Keefe Dep. Ex. 6)

Keefe has contended all along and the Defendants have admitted that they knew that he did no work at John T. Clark & Sons. Keefe testified back in February, 2002, that had stopped

11

doing other work as of May 25, 2000, for John T. Clark & Sons, other than longshore work. (Ex. 3: Keefe Dep. Vol. I, P. 54) Even the Rules Committee members admitted that the one time Keefe appeared before the Committee, he said he had a no show job with his brother's company. (Ex. 5: Picard Dep. Ex. 3; Ex. 12: Picard Dep. P. 71; Ex. 13: McGaffigan Dep. P. 15)

Yet, other members, including the Rule Committee chairman, "worked" at other jobs and crafts in violation of Rule 36. Picard is involved in the building and construction business. (Ex. 12: Picard Dep. P. 20-23) Lee has worked openly as a bar advocate counsel. (Ex. 17: A. Benedetti sworn statement; Ex. 18: 2006 Lawyer's Diary) Neither has been suspended or disciplined. Furthermore, prior to invoking this rule against Keefe, the Defendants had not invoked it against anyone since 1998. (Ex. 15: Defendants' Answers to Interrogatories, No. 9)

Therefore, at least for the purposes of summary judgment, Keefe has presented evidence that the Rules Committee suspended him and put him back in Gang 12 in retaliation for his having brought suit against the Defendants.

### E.    Keefe's Suspension Was "Discipline."

In their Memorandum (p. 13) the Defendants argue that Keefe's six month suspension somehow does not legally constitute "discipline." That argument is belied by the statutes themselves. Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5), states:

> "(5) Safeguards against improper disciplinary action. No member of any labor organization may be fined, <u>suspended</u>, expelled, <u>or otherwise disciplined</u> except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." (emphasis added)

Furthermore, 29 U.S.C. § 529 provides:

"It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, <u>suspend</u>, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 shall be applicable in the enforcement of this section." (emphasis added)

Hence, Defendants cannot credibly state that "suspensions" are not covered by the Act.

### F.    The Rules Committee Did Not Afford Keefe Notice Of Its Last Meeting

It is undisputed that on March 20, 2003, the Rules Committee met again. A motion was passed to rescind the vote taken on March 5, 2003, and to hold that Keefe had violated Rule 36 and to suspend him for such. Keefe did not attend this meeting. (Ex. 5: Picard Dep. Ex. 3)

Keefe did not receive any notice of this March 20, 2003, meeting. (Ex. 7: Plaintiff's Answers to Defendants' Request for Admissions, Nos. 40, 41)

However, the Statute requires written notice as a guarantee of fairness in the expulsion process. <u>Berg v. Watson</u>, 417 F. Supp. 806, 811 (S.D.N.Y 1976); <u>Magelssen v. Local 518, Operative Plasterers and Cement Masons</u>, 233 F. Supp. 459, 461 (W.D. Mo. 1964).[5] Hence the lack of notice of the March 20, 2003, violated Keefe's rights under the Statute.

### IV.    CONCLUSION

Based upon the foregoing, the Defendants' Motion for Summary Judgment should be

---

[5] In their Memorandum (p. 15) the Defendants cite the case of <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 319 (1950), purportedly for the proposition that Keefe's lack of notice of a hearing was not a violation of the Statute. However, the cited case was not a LMRDA case. Rather it concerned publication authorized by § 100-c of the New York Banking Law.

denied.

                                              Stephen Keefe
                                              By his attorney

                                              */s/ Scott A. Lathrop*
                                              _____
                                              Scott A. Lathrop, Esq.
                                              Scott A. Lathrop & Associates
                                              122 Old Ayer Road
                                              Groton, MA 01450
                                              (978) 448-8234
                                              BBO No. 287820

Dated: August 25, 2006

## Certificate of Service

I, Scott A. Lathrop, hereby certify that I have served the foregoing Opposition on the defendants by mailing this day a copy to the last known address of their Attorney of Record.

                                              */s/ Scott A. Lathrop*
                                              _____
                                              Scott A. Lathrop

Dated: August 25, 2006