# In The Matter Of:

*Stephen Keefe v.*
*Local 805, ILA, AFL-CIO, et al.*

---

*Paul F. McGaffigan*
*Vol. 1, May 9, 2006*

---

*Doris O. Wong Associates, Inc.*
*Professional Court Reporters*
*50 Franklin Street*
*Boston, MA 02110*
(617) 426-2432

Original File MCGAFF~1.V1, 19 Pages
Min-U-Script® File ID: 3507193547

**Word Index included with this Min-U-Script®**

Page 1

Volume 1
Pages 1 to 19
Exhibits (None)
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEPHEN KEEFE,
    Plaintiff,
vs.                                     : Civil Action
                                        : No. 04-11340-DPW
LOCAL 805, INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION,
AFL-CIO; LOCAL 800,
INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, AFL-CIO; and
LOCAL 799, INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION,
AFL-CIO,
    Defendants.

    DEPOSITION OF PAUL F. McGAFFIGAN a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Valerie
L. Shand-Salemo, Professional Shorthand Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Mullen & McGourty,
52 Temple Place, Fourth Floor, Boston,
Massachusetts, on Tuesday, May 9, 2006, commencing
at 12:10 p.m.
    PRESENT:
        Scott A. Lathrop & Associates
        (By Scott A. Lathrop, Esq.)
        122 Old Ayer Road, Groton, MA 01450,
        for the Plaintiff.
        Mullen & McGourty
        (By Michael L. Mahoney, Esq.)
        52 Temple Place, Fourth Floor,
        Boston, MA 02111, for the Defendants.

Page 2

PRESENT (Continued):
    Law Offices of Bernicle, McNelley & Nugent
    (By Edward J. McNelley, Esq.)
    101 Tremont Street, Suite 700,
    Boston, MA 02108, for the Deponent.
ALSO PRESENT: Stephen Keefe

Page 3

        INDEX
WITNESS            DIRECT    CROSS
PAUL F. McGAFFIGAN
    BY MR. LATHROP        4

Page 4

                PROCEEDINGS
[1]
[2]     MR. LATHROP: Same deposition stipulations?
[3]     MR. McNELLEY: Yup.
[4]     And also the documents that you had
[5] subpoenaed for us to bring to the court, namely,
[6] five years of income tax returns; that you've had a
[7] chance to examine them; that you found that all W-2
[8] reported income is income derived from his work as a
[9] Boston longshoreman; and that there is no other
[10] outside income reported on a W-2. And I believe you
[11] have an issue on a pension on a 1099.
[12]    And we'll let the record reflect that they
[13] conform to the subpoena that was issued.
[14]    MR. LATHROP: The records conform to the
[15] subpoena, yes.
[16]    PAUL F. McGAFFIGAN
[17] a witness called for examination by counsel for the
[18] Plaintiff, having been satisfactorily identified by
[19] the production of his driver's license and being
[20] first duly sworn by the Notary Public, was examined
[21] and testified as follows:
[22]            DIRECT EXAMINATION
[23]            BY MR. LATHROP:
[24]    Q: Would you please state your full name and

Page 5

[1] address.
[2]     MR. McNELLEY: And we stipulate that all
[3] his W-2 income on here is derived from his work as a
[4] longshoreman.
[5]     MR. LATHROP: Actually, I saw no W-2s, per
[6] se.
[7]     MR. McNELLEY: Well, the Federal reporting
[8] ID numbers draw longshoreman-derived income.
[9]     MR. LATHROP: They appear to be, yes.
[10]    MR. McNELLEY: Well, then, why don't we go
[11] over them, and we can go over them one by one. I
[12] mean, we've had a chance to examine them. Either
[13] they do or they don't.
[14]    MR. LATHROP: But you're asking for a
[15] stipulation.
[16]    MR. McNELLEY: I am asking for a
[17] stipulation because I provided you the documents.
[18]    MR. LATHROP: Yeah —
[19]    MR. McNELLEY: It shows you where the
[20] income came —
[21]    MR. LATHROP: — and I'm not going to ask
[22] any questions about them.
[23]    MR. McNELLEY: Well, I mean, are you
[24] satisfied that that's where the income comes from?

Paul F. McGaffigan
Vol. 1, May 9, 2006
Case 1:04-cv-11340-DPW    Document 24-14    Filed 08/25/2006    Page 3 of 5
Stephen Keefe v.
Local 805, ILA, AFL-CIO, et al.

Page 6

[1] Here are the documents. We can go over them again.
[2]     MR. LATHROP: I'm not going to go through
[3] my trial strategy with you.
[4]     MR. McNELLEY: All I'm asking you is a very
[5] simple question.
[6]     MR. LATHROP: I understand that.
[7]     MR. McNELLEY: But I don't think you do.
[8]     MR. LATHROP: If we want to get out of here
[9] yet today, I would like to get forward with the
[10] deposition.
[11]     MR. McNELLEY: And you can go forward with
[12] the deposition —
[13]     MR. LATHROP: Thank you.
[14]     MR. McNELLEY: — when we resolve the
[15] matter.
[16]     MR. LATHROP: No, we don't have to resolve
[17] the matter.
[18]     MR. McNELLEY: Oh, yes, we most certainly
[19] do have to resolve the matter.
[20]     MR. LATHROP: No, we don't have to.
[21]     MR. McNELLEY: Now, I mean, I gave you the
[22] W-2s — the income tax returns.
[23]     MR. LATHROP: I looked at the income tax
[24] returns, yes.

Page 7

[1]     MR. McNELLEY: Fine. Then, that's all you
[2] have to say is that's what it is, and we'll move on.
[3]     MR. LATHROP: They are what they are, and
[4] you gave them to me, and I'm not going to ask any
[5] questions about them.
[6]     MR. McNELLEY: So you are satisfied.
[7]     MR. LATHROP: I'm satisfied that he's fully
[8] responded to the subpoena.
[9]         BY MR. LATHROP:
[10]   Q: Would you please state your full name and
[11] address for the record, sir.
[12]     MR. McNELLEY: I just want to object for
[13] the record. You had a chance to examine the
[14] documents. You're being nonresponsive. You've seen
[15] it. We've sat down. We've talked about it.
[16]    But go ahead and move on.
[17]     MR. LATHROP: Thank you.
[18]   Q: Would you please state your full name and
[19] address for the record, sir.
[20]   A: Paul F. McGaffigan.
[21]   Q: What's your date of birth?
[22]   A: 6/12/42.
[23]   Q: I think I cut you off before you gave your
[24] address. What's your address?

Page 8

[1]   A: 42 Harvard Street, Charlestown,
[2] Massachusetts.
[3]   Q: Okay. Are you currently receiving a
[4] pension?
[5]   A: Yes.
[6]   Q: And from whom?
[7]   A: Norfolk County.
[8]   Q: Okay. And did you retire from a position
[9] in the Norfolk County?
[10]   A: Yes, I did.
[11]   Q: What position did you retire from?
[12]   A: Firefighter.
[13]   Q: And when did you retire as a firefighter?
[14]   A: February 1, 1996.
[15]   Q: Are you currently —
[16]   A: Excuse me. '97.
[17]   Q: Are you currently a longshoreman?
[18]   A: Yes, I am.
[19]   Q: When you did you first become a
[20] longshoreman?
[21]   A: 1964.
[22]   Q: And was there a period of time when you
[23] were both a firefighter and a longshoreman?
[24]   A: No, I was casually employed — not a

Page 9

[1] full-time longshoreman, no.
[2]   Q: For what period of time were you casually
[3] employed as a longshoreman?
[4]   A: 20 years.
[5]   Q: What 20-year period?
[6]   A: 1976 to 1996.
[7]   Q: Were you in a gang during that period of
[8] time?
[9]   A: No, I was not.
[10]   Q: Did your status change sometime after 1996?
[11]   A: Yes, I did. I retired.
[12]   Q: Okay. You retired as a firefighter?
[13]   A: Yes, I did.
[14]   Q: And did you continue to work as a
[15] longshoreman?
[16]   A: After my retirement, yes.
[17]   Q: And did that change in any regard?
[18]   A: I don't understand the question.
[19]   Q: You said you were a casual through 1996.
[20]   A: Uh-huh.
[21]   Q: Did you continue to work as a casual after
[22] 1996?
[23]   A: No. I was employed in a gang because I did
[24] not have any other income or job.

Stephen Keefe v.
Local 805, ILA, AFL-CIO, et al.
Case 1:04-cv-11340-DPW    Document 24-14    Filed 08/25/2006    Page 4 of 5
Paul F. McGarrigan
Vol. 1, May 9, 2006

**Page 10**

[1] Q: Okay. And are you still working as a
[2] longshoreman?
[3] A: Yes, I am.
[4] Q: What gang are you in now?
[5] A: Gang No. 7.
[6] Q: Have you ever served on the Rules
[7] Committee?
[8] A: Yes, I did.
[9] Q: All right. I should ask you first, what
[10] local were you a member of?
[11] A: Local 805.
[12] Q: How is it that you happen to be a member of
[13] 805 as opposed to 800 or 799?
[14] A: Because my father was a member of 805.
[15] Q: Were you elected by Local 805 to serve on
[16] the Rules Committee?
[17] A: Yes, sir.
[18] Q: When you were you first so elected?
[19] A: January 1, 2002.
[20] Q: Are you still on the Rules Committee?
[21] A: Yes.
[22] Q: Have you served continuously on the Rules
[23] Committee since January 1, 2002?
[24] A: Yes.

**Page 11**

[1] Q: During your tenure on the Rules Committee,
[2] are you aware of any longshoremen who have been
[3] suspended for violating the Rule 36, the "work
[4] exclusively at the craft" rule?
[5] A: Yes.
[6] Q: Who are you aware of that's been suspended?
[7] A: I believe the names are somewhere here on
[8] record. I can't recall all of them.
[9] Q: Can you recall any of them?
[10] A: Oh, there was a John McLaughlin, a Patrick
[11] Considine, Daniel Considine, Michael McEvoy. Let me
[12] think. Daniel O'Brien.
[13] Q: These are all during your tenure?
[14] A: No.
[15] Q: Okay. Let's focus. I'm asking about
[16] during your tenure on the Rules Committee.
[17] A: Oh, just Stephen Keefe.
[18] Q: During your tenure on the Rules Committee,
[19] was anyone lowered from a gang down to Gang 12 for a
[20] violation of the "work exclusively at the craft"
[21] rule?
[22] A: Yes.
[23] Q: Who?
[24] A: Stephen Keefe.

**Page 12**

[1] Q: Okay. Anyone else during your tenure?
[2] A: No.
[3] Q: Were you present at any Rules Committee
[4] meetings where Mr. Keefe's situation was described?
[5] A: What description?
[6] Q: Let me rephrase that.
[7] Did you attend any Rules Committee meeting
[8] during which a possible suspension of Mr. Keefe was
[9] discussed?
[10] A: I don't recall.
[11] Q: Were you present at any Rules Committee
[12] meeting at which Mr. Keefe appeared with regard to
[13] the topic of his possible suspension?
[14] A: Yes.
[15] Q: Do you recall anything that was said or
[16] done during that meeting?
[17] A: He was in violation of the rule — I don't
[18] know which number.
[19] THE WITNESS: What is it, third something?
[20] A: I don't know which number, but working
[21] another job.
[22] Q: Do you recall what was said during this
[23] meeting?
[24] A: No.

**Page 13**

[1] Q: Do you recall the employer for whom
[2] Mr. Keefe reportedly was working?
[3] A: John T. Clark & Son, yes.
[4] Q: Did you understand that to be a family
[5] business?
[6] A: Yes.
[7] Q: Did you understand that to be a company
[8] that was owned by Mr. Keefe's brother?
[9] A: I don't know exactly who owned it.
[10] Q: Was there any discussion about it being a
[11] no-show job?
[12] A: No.
[13] Q: You don't recall that?
[14] A: Nope.
[15] Q: What do you recall being discussed about
[16] that position?
[17] A: That he had another job working for John T.
[18] Clark, getting pension — excuse me — income and
[19] vacations and holiday pay and health benefits.
[20] Q: Who said this?
[21] A: I believe it was on a deposition or a court
[22] record. But I don't have — I saw it. It was
[23] presented.
[24] Q: Who presented the deposition?

Page 14

[1] A: I don't recall who presented it.
[2] Q: So you're not testifying as to anything
[3] Mr. Keefe said to the committee. You're talking
[4] about something that purportedly was in a
[5] deposition?
[6] A: He was not at the meeting until later on.
[7] Q: Okay. I'm sorry. My questions were
[8] directed to the meeting which he attended. And I'm
[9] asking you what you recall being said or done at
[10] that meeting?
[11] A: By Mr. Keefe?
[12] Q: By anyone at the meeting which Mr. Keefe
[13] attended.
[14] A: I don't understand the question.
[15] Q: Do you recall a meeting at which Mr. Keefe
[16] attended a Rules Committee meeting?
[17] A: Yes, he came before the Rules Committee.
[18] Q: Okay. What do you recall being said or
[19] done by anyone at that meeting, if anything?
[20] A: He was working another job.
[21] Q: And was that something said by someone?
[22] A: It was said by everybody.
[23] Q: Okay. What do you recall, if anything,
[24] said by Mr. Keefe?

Page 15

[1] A: He said that he had another income, and he
[2] wasn't working another job.
[3] Q: Okay.
[4] A: So we said he has another job.
[5] Q: Okay. You have another income, don't you?
[6] A: Yes.
[7] Q: Okay. That doesn't — doesn't cause you —
[8] A: I'm not working another job.
[9] Q: Please let me finish the question, sir.
[10] You have another income, do you not, sir?
[11] A: Yes.
[12] Q: And the fact that you have another income
[13] doesn't disqualify you under the "work exclusively
[14] at the craft" rule, correct?
[15] A: No. Because it's in the rules that I can
[16] be retired and work.
[17] Q: It says that literally in the rule?
[18] A: Uh-huh.
[19] Q: You're certain of that?
[20] A: I'm positive of it.
[21] Q: Okay.
[22] A: Could I see a copy of the rules just to
[23] tell you which one it is?
[24] Q: I'm showing you a copy of what was marked

Page 16

[1] as Exhibit 1 in Mr. Picard's deposition. I think
[2] you could look directly at Rule 36.
[3] A: (Reviewing document) Retirement. It says
[4] right there, "notarized retirement papers."
[5] Q: Okay. Now, what was your evidence that
[6] Mr. Keefe was actually working at another job?
[7] A: Because he had said it when he went to
[8] court. He was working for John T. Clark.
[9] Q: He said he was actually —
[10] A: Yes.
[11] Q: — putting in labor?
[12] A: Employed by John T. Clark. And it shows
[13] him — it shows his income on his 2003 Social
[14] Security earnings that he's working for John T.
[15] Clark.
[16] Q: You were referencing a W-2 report?
[17] A: Social Security income.
[18] Q: Okay. Do you have any other evidence that,
[19] in fact, he actually worked physically worked this
[20] job?
[21] A: No.
[22] Q: Is it — was it your position that anyone
[23] who does any physical labor in order to gain an
[24] income that wasn't in the field of being a

Page 17

[1] longshoreman violated Rule 36?
[2] MR. MAHONEY: Objection to the form. You
[3] can answer.
[4] A: Can you repeat that?
[5] MR. LATHROP: Would you read it back,
[6] please.
[7] *(Question read)
[8] A: Yes.
[9] MR. LATHROP: Nothing further. You're done
[10] as far as I'm concerned.
[11] MR. MAHONEY: I have no questions.
[12] MR. McNELLEY: I have nothing.
[13] (Whereupon, the deposition was
[14] concluded at 12:25 p.m.)