UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  04-11340 DPW

```
*********************************************
STEPHEN KEEFE,                                *
    Plaintiff                                 *
                                              *
    v.                                        *
                                              *
LOCAL 805,  INTERNATIONAL                     *
LONGSHOREMEN'S ASSOCIATION,  AFL-CIO,         *
LOCAL 800,  INTERNATIONAL                     *
LONGSHOREMEN'S ASSOCIATION,  AFL-CIO,         *
and LOCAL 799,  INTERNATIONAL                 *
LONGSHOREMEN'S ASSOCIATION,  AFL-CIO,         *
    Defendants                                *
*********************************************
```

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS
## AND RELEVANT FACTS IGNORED BY DEFENDANTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Denied.

   A. In the prior law suit the defendants first took Keefe's deposition on February 6, 2002. During that deposition Keefe testified to the following: At one point in time he did the payrolls for John T. Clark & Sons. However, he stopped doing that work about 18 months prior to the deposition. Keefe was then no longer performing any work other than long-shore work for John T. Clark. (Ex. 3: Keefe Dep. Vol. I, P. 11-12) Keefe had stopped doing other work as of May 25, 2000, for John T. Clark & Sons, other than longshore work. (Ex. 3: Keefe Dep. Vol. I, P. 54)[1]

18. Undisputed

19. Undisputed.

20. Denied.

   A. In the prior lawsuit the defendants further deposed Keefe on January 7, 2003. During that deposition Keefe only testified to the following: While Keefe had not performed any work for John T. Clark, other than longshore work, since May 25,

---

[1] Record citations are to the exhibits attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

    2000, he was still on the office payroll and was "available to do work as it's assigned to [him] by John T. Clark." (Ex. 4: Keefe Dep. Vol. II, P. 10-11)

21.  Undisputed.

22.  Disputed.

  A.  At the May 8, 2006, the following was also testified to. Keefe's brothers were the owners of John T. Clark & Son Company. (Ex. 8: Keefe Dep. Vol. III, P. 13) John T. Clark & Sons was not in business in 2004, and Keefe had not received even an income from them since 2004. (Ex. 8: Keefe Dep. Vol. III, P. 10, 26) When John T. Clark was still in business, Keefe didn't have any responsibilities. He worked zero hours a week at John T. Clark. (Ex. 8: Keefe Dep. Vol. III, P. 11-12) He received an income from John T. Clark because his family was taking care of him. (Ex. 8: Keefe Dep. Vol. III, P. 12)

23.  Denied.

  A.  Keefe did not receive notice of this meeting. (Ex. 7: Plaintiff's Answers to Defendants' Request for Admissions, Nos. 29, 31; Ex. 8: Keefe Dep. Vol. III, p. 22)

24.  Denied.

  A.  The summons only stated that the purpose of the hearing was to show just cause as to why Keefe should not be suspended and placed into Gang 12 and that the Committee had found Keefe in violation of not honoring the pledge that he had signed. (Ex. 6: Picard Dep. Ex. 4)

25.  Denied.

  A.  Keefe did not receive notice of this meeting. (Ex. 7: Plaintiff's Answers to

        Defendants' Request for Admissions, Nos. 29, 31; Ex. 8: Keefe Dep. Vol. III, p. 22)

26. Admitted.

27. Admitted.

    A. But Picard also testified that the Rules Committee sent out this certified notice: "Because we wanted to talk to him and see if he had another job." (Ex. 12: Picard Dep. P. 44)

28. Admitted.

29. Admitted.

    A. However, it was also admitted by a member of the Rules Committee that Keefe told the Rules Committee that he had another income, and that he wasn't working another job. (Ex. 13: McGaffigan Dep. P. 15) Keefe said that he had a no-show job with his brother's company. (Ex. 12: Picard Dep. P. 71)

30. Admitted.

    A. However, Picard sent it by regular mail. (Ex. 5: Picard Dep. Ex. 3) and Keefe did not receive any notice of this March 20, 2003, meeting. (Ex. 7: Plaintiff's Answers to Defendants' Request for Admissions, Nos. 40, 41)

31. Admitted that the Rules Committee voted to reinstate Keefe's suspension, but denied that the reason was because he failed to prove he was working exclusively at the craft.

    A. In addition to being a Longshoreman, Picard is involved in the building and construction business. Picard buys a piece of property, builds a house on it and then sells or rents it. (Ex. 12: Picard Dep. P. 20) For example, Picard bought 238 Breman Street, East Boston. (Ex. 12: Picard Dep. P. 20) It is a three-family.

        Picard rehabbed it, fixed up the bathroom and kitchens. (Ex.12: Picard Dep. P. 21)  He also fixed the gutter, put some new windows in and painted it. (Ex. 12: Picard Dep. P. 22)  Now he rents it out and continues to do the maintenance work on the house. (Ex. 12: Picard Dep. P. 23)  Picard did this while on the Rules Committee. (Ex. 12: Picard Dep. P. 22)

  B.    The only person who has been suspended while Picard was on the Rules Committee was Keefe. (Ex. 12: Picard Dep. P. 35) In fact, other that Keefe, no one has been disciplined under this rule since 1998. (Ex. 15: Defendants' Answers to Interrogatories, No. 9)

  C.    Brendan Lee graduated from New England School of Law in 1994.  (Ex. 16: Lee Dep. P. 6) He has been a member of Local 800 since 1989 or 1990. (Ex. 16: Lee Dep. P. 6)   Atty. Lee has been a member of Gang 8 since approximately December, 2004. (Ex. 16: Lee Dep. P. 7)  He moved into Gang 9 in either 2001 or 2002.  (Ex. 16: Lee Dep. P. 8)   He moved into Gang 11 in either 2000 or 2001.   He was in Gang 10 in approximately 2002. (Ex. 16: Lee Dep. P. 8)   In his deposition, Atty. Lee claimed not to have done any legal work for any compensation since 2001. (Ex. 16: Lee Dep. P. 10)  In fact, between the years 2001 and 2006 Atty. Lee has been paid approximately $60,000 each year by the Committee for Public Counsel Services for his services as a bar advocate. (Ex. 17: A. Benedetti sworn statement)  Furthermore, Atty. Lee is even openly listed in Lawyer's Diary. (Ex. 18: 2006 Lawyer's Diary)

32.    Denied.

  A.    Defendants' Answers and Objections to Plaintiff's Second Set of Interrogatories,

p. 5, does not state anything about Keefe being placed in Gang 11, much less being placed in Gang 11 on August 10, 2003. (Ex. 15: Defendants' Answers to Interrogatories, No. 9)

33. Disputed.

   A. By Keefe's counsel sending an appeal letter to ILS President Bowers on April 7, 2003, Keefe followed the same internal union appeal mechanism that he followed prior to initiating his first lawsuit against the defendants. As defendants note in Fact No. 5, above, in March of 1999, Keefe's attorney wrote directly to President Bowers of the ILA, alleging that Local 805 did not have sufficient reason to deny Keefe's transfer application.

34. Disputed.

   A. Defendants fail to note that President Bowers took well over four months to respond to Keefe's internal union appeal. Bowers responded on December 11, 2003. (Ex. 20: Keefe Dep. Ex. 14)

35. Undisputed.

36. Disputed.

   A. There is no "nevertheless." Keefe followed the same procedure he followed before and the procedure he was aware of. Keefe understood that if he that if he thought that he was being treated unfairly by the union, he could go to the international. (Ex. 8: Keefe Dep. Vol. III, P. 116)

Stephen Keefe

By his attorney

*Scott A. Lathrop*

_____
Scott A. Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450
(978) 448-8234
BBO No. 287820

Dated: August 25, 2006

Certificate of Service

I, Scott A. Lathrop, hereby certify that I have served the foregoing Statement on the defendants by mailing this day a copy to the last known address of their Attorney of Record.

*Scott A. Lathrop*

_____
Scott A. Lathrop

Dated: August 25, 2006