United States District Court
District of Massachusetts

| | |
|---|---|
| Steven Keefe,<br>　　　Plaintiff<br><br>v.<br><br>Locals 805, 800, 799,<br>International Longshoremen's<br>Association, AFL-CIO, et.al.<br>　　　Defendants | Docket No. 04-CV-11340DPW |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS', LOCALS 805, 800, 799, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO'S MOTION FOR LEAVE OF COURT TO AMEND ANSWER

NOW COMES the Defendants, Local 805, 800, 799, International Longshoremen's Association, AFL-CIO, hereinafter "Defendant", and hereby moves this Honorable Court for leave to file an Amended Answer to the Complaint, adding the affirmative defense of failure to exhaust union remedies in response to the plaintiff's allegations. As reasons here for, the Defendant states as follows:

### FACTS

1. In 1993, the Plaintiff, Stephen Keefe (hereinafter "Keefe") a member of Local 1947 of the ILA, moved from New Hampshire to Massachusetts, and became a supervisor in his family-owned stevedore and terminal operating business known as John T. Clark & Sons ("JTC").

2. In August of 1998, due to Massport's failure to renew JTC's lease, Keefe requested a transfer of his ILA membership from Local 1947 in Portsmouth, New Hampshire, to Local 805 in East Boston, Massachusetts.

1

3. In a letter from the President and Recording Secretary of Local 805, dated November 1, 1998, Keefe was informed that Local 805's executive board had rejected Keefe's transfer request.

4. On August 27, 1999, ILA President Bowers directed Local 805 to accept Keefe's transfer request immediately.

5. On or about January 15, 2000, Local 805 accepted Keefe's transfer request.

6. Following Keefe's initial transfer to Local 805, the Rules Committee placed Keefe in Gang 12.

7. Keefe brought suit in 2001 in the United States District Court, District of Massachusetts, against Locals 805, 800, and 799, in which he alleged, that by not initially accepting his application for transfer, the Locals breached Article XV of the ILA Constitution.

8. Any union member that wished to move from Gang 12 to Gang 11 (or higher) must sign a pledge sheet and appear before the Rules Committee with sufficient proof that they were working exclusively at the craft of Longshoremen.

9. On May 25, 2000, Keefe signed the Union Pledge Sheet, in which he agreed to work exclusively as a longshoreman, and acknowledged that he had received and was subject to all of the Hiring Hall work rules.

10. Following Keefe's signing of the pledge, in October of 2000, the Rules Committee placed Keefe in Gang 11.

11. On February 6, 2002, counsel of Locals 805, 800, and 799 deposed Keefe in the 2001 litigation. At this deposition, Keefe admitted that on May 24, 2000, the date that the President of JTC wrote the letter to the Rules Committee on Keefe's behalf, that Keefe was still doing other work in addition to working as a longshoreman for JTC.

12. After learning of Keefe's additional and ongoing employment with JTC, at the end of January 2003, the Rules Committee notified Keefe that it would be conducting a hearing for Keefe to show cause as to why he should not be suspended and placed into Gang 12 for violation of Hiring Hall rule #36.

13. Due to Keefe's absence at the February 6, 2003 hearing, and thus his failure to show cause, the Rules Committee voted to suspended Keefe for six months, upon which he would then be placed in Gang 12.

14. Prior to the initiation of this lawsuit, the only form of protest Keefe had made to the Rules Committee's suspension was through a letter sent to ILA President Bowers from Keefe's attorney on April 7, 2003.

15. Article XIX, Section 1 of the ILA Constitution indicates, that prior to bringing a lawsuit against ILA or any local, all union members must first go through proper channels within the union.

16. Nonetheless, Keefe has brought suit against Local 805, 800, and 799, alleging that his suspension and the Locals' procedural safeguards were in violation of 29 U.S.C. § 411(a)(4), 29 U.S.C. § 411(a)(5), and 29 U.S.C. § 529.

## LEGAL ARGUMENT

1. The idea that once an action has been timely brought, courts ought to regard indulgently any amendment whose denial would cost the Plaintiff his claim." Smith & Zobel, Mass. Practice., Vol. 6, pocket part 2004 (p.169) quoting Proctor v. North Shore Community Arts Foundation, 47 Mass. App. Ct. 372, 378 (1999). Generally, it is the practice to allow liberal amendments of pleadings. Provincetown Chamber of Commerce, Inc. v. Grace, 14 Mass. App. Ct. 903 (1982).

2. A motion to amend a pleading should be allowed unless there exists some good reason to deny it, if it is denied the record should show some reasons express or apparent for the denial. Evans Products Co. v. D.J. Development Corp., 6 Mass. App. Ct. 306 (1978).

3. Additionally, a statement of reasons or findings of fact may be required to support a judge's action in denying a motion to amend a pleading. Goulet v. Whitin Machine Works, Inc., 399 Mass. 547 (1987).

4. None of the parties will be prejudiced by the addition of the affirmative defense of failure to exhaust union remedied by the plaintiff, and justice requires that this Court allow this Motion for Leave to File an Amended Answer.

5. Leave to amend a party's pleadings shall be freely given when justice so requires. M.R.C.P. 15(a).

WHEREFORE, the Defendants, Local 805, 800, 799, International Longshoremen's Association, AFL-CIO, respectfully moves that this Court grant its leave to file the Amended Answer.

Dated: August 21, 2006

Respectfully submitted,
The Defendants,

Michael L. Mahoney
Mullen & McGourty
52 Temple Place, 4th Floor
Boston, MA 02111
(617) 338-9200
BBO# 557562

## CERTIFICATE OF SERVICE

I, Michael L. Mahoney, hereby certify that I have served a true copy of the within document this 25 day of August, 2006, via electronic mail and via first class mail, postage prepaid upon the following:

Scott A. Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450

Michael L. Mahoney