UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11340 DPW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
STEPHEN KEEFE,                                           \*
   Plaintiff                                            \*
                                                        \*
   v.                                                   \*
                                                        \*
LOCAL 805, INTERNATIONAL                                 \*
LONGSHOREMEN'S ASSOCIATION, AFL-CIO,                     \*
LOCAL 800, INTERNATIONAL                                 \*
LONGSHOREMEN'S ASSOCIATION, AFL-CIO,                     \*
and LOCAL 799, INTERNATIONAL                             \*
LONGSHOREMEN'S ASSOCIATION, AFL-CIO,                     \*
   Defendants                                           \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S PRE-TRIAL MEMORANDUM

**1.  TRIAL COUNSEL**

    a.  COUNSEL FOR PLAINTIFF

        Scott A. Lathrop, Esq.
        Scott A. Lathrop & Associates
        122 Old Ayer Road
        Groton, MA 01450
        (978) 448-8244

    b.  COUNSEL FOR DEFENDANTS

        Michael L. Mahoney
        Mullen & McGourty
        52 Temple Place, 4th Floor
        Boston, MA 02111
        (617) 338-9200

**2.  JURY TRIAL OR BENCH TRIAL**

The case is to be tried before a jury.

**3.     SUMMARY OF PLAINTIFF'S EVIDENCE**

Keefe has been a member of the International Longshoremen's Association ("ILA") over the past 23 years.  In 1993 Keefe moved to Massachusetts from New Hampshire and became a supervisor in a family-owned business called John T. Clark & Sons, ("JTC"), a stevedore and terminal operator at Conley Terminal in Boston, Massachusetts.

In 1998 Massport did not renew the lease of JTC, thereby reducing the amount of family-owned work available to Keefe.  Beginning in May, 1998, Keefe reported to the Local 805 hiring hall almost daily for dispatch as a fill-in Longshoreman at the lower end of the seniority roster.

On August 10, 1998, Keefe, citing Article XV ("Transfer of Membership") of the ILA Constitution, wrote to Vice-President William P. McNamara and ACD Vice-President Edward Connolly, concerning a transfer of his ILA membership from Local 1947 in Portsmouth, New Hampshire, to Local 805 in East Boston, Massachusetts.  Keefe was a member in good standing of Local 1947, and he requested that an official transfer card be supplied to him.  Keefe also forwarded from Local 1947 a letter that certified that Keefe was a "paid-up member of I.L.A. Local 1947 in good standing for the past 23 years;" and that there "are no charges against him, nor have their ever been charges against him since he has been a member of Local 1947."

Article XV ("Transfer of Membership") of the ILA Constitution provided, at Section 1, that any member in good standing may transfer his membership from one ILA local union to another "provided he is working at the trade covered by the local, and is eligible for membership in and complies with the provisions respecting transfers of the local union to which he seeks to be

transferred."

In August, 1998, Keefe was a member in good standing of Local 1947 and had no charges pending against him. Prior to, upon and following Keefe's application for transfer to Local 805, he was working as a Longshoreman in the Port of Boston, namely, within the trade covered by Local 805 and its collective bargaining agreements.

On October 15, 1998, Keefe again wrote to Vice-Presidents McNamara and Connolly inquiring about the status of his request for a transfer of membership.

By letter dated November 1, 1998, the President and Recording Secretary for Local 805 advised Keefe that at a meeting on September 29, 1998, Keefe's application was considered by Local 805's Executive Board and was referred to the membership body for action. The letter also stated that the members unanimously voted not to accept Keefe's transfer "at this time."

In apparent response to a later letter from Keefe, Vice-President McNamara on December 9, 1998, recommended to Local 805 that Keefe's application again be brought before the Executive Board and membership of Local 805 "as soon as possible, ostensibly for reconsideration." Local 805, however, took no action in response to this recommendation.

On March 1, 1998, Keefe's attorney, James T. Masteralexis, Esq., wrote to Local 805, requesting reconsideration of its decision not to accept Keefe's transfer. Local 805 took no action in response to this request.

When no response was received, Atty. Masteralexis on April 22, 1999, wrote directly to President Bowers of the ILA, contending that Local 805 did not have good and sufficient reasons for denying Keefe's application for transfer.

By letter of May 24, 1999, President Bowers requested the President and Business Agent of

Local 805 to immediately provide him in writing the reason for Local 805's rejection of Keefe's transfer application.

Local 805's Executive Board shortly thereafter sent a response to President Bowers in which it put forth its contentions for its rejection of Keefe's transfer application.

On August 27, 1999, President Bowers advised the officials of Local 805 that after reviewing the reasons set forth by the Local's Executive Board, the International found no sufficient basis for denial of Keefe's transfer. Bowers informed them that the International directed Local 805 to accept Keefe's transfer or, if it failed to comply immediately, that he would bring appropriate disciplinary action against Local 805.

Having received no further response from Local 805, President Bowers appointed a Committee to investigate the circumstance of Local 805 denying Keefe's application fora transfer.

On December 22, 1999, the Committee appointed by President Bowers found that Local 805 did not have good and sufficient reasons for denying Keefe's application for transfer and recommended that President Bowers give Local 805 until January 15, 2000, to reconsider and accept Keefe's application for membership without qualification.

On or about January 15, 2000, Local 805 finally accepted Keefe's application for membership.

The ILA Hiring Hall for the port of Boston, Massachusetts, is operated jointly by Local 805, Local 800 and Local 799 by a Rules Committee that has a total of nine members, three members from each of the three Locals.

On or about January 15, 2000, the Rules Committee, placed Keefe in Gang 12.

At all relevant times there was a gang system at the Hiring Hall. Gang 12 is the lowest and

last gang dispatched from the Hiring Hall. Gang 12 by definition consisted of "two jobbers," that is, those Longshoremen who at the same time held second jobs and who did not work exclusively at the Longshore craft.

Like other Gang 12 members, Keefe held another "job" during this period, namely Keefe had a "job" at JTC, a family owned business. During this period, four persons worked at JTC, Keefe and his two brothers -- Timothy and Joseph – along with a William Horohoe.

During this period Keefe had no specific duties; to earn his "salary" all Keefe had to do was to make himself available if JTC needed him. His only specific assignment was to try to develop a work history on the waterfront in order for JTC to better position itself if it had any consulting work to do.

On or about October 1, 2000, the Rules Committee placed Keefe in Gang 11.

On or about February 1, 2001, Keefe, brought suit in United States District Court, District of Massachusetts, against Local 805, Local 800 and Local 799, C.A. No. 01-10194, alleging, inter alia, that by not accepting Keefe's application for membership on or near August 10, 1998, the Locals breached Article XV of the ILA Constitution and caused Keefe to lose substantial income and benefits.

In October, 2002, Keefe move into Gang 10.

On January 7, 2003, Keefe was deposed by counsel for the Local 805, Local 800 and Local 799 in the above referenced case. At that time counsel for Local 805, Local 800 and Local 799 examined Keefe with regard to the fact that during 2001 Keefe had received income from JTC.

In February, 2003, the Rules Committee held a meeting about Keefe's Gang status without ever informing Keefe. The Rules Committee suspended Keefe for six months and put him back in

5

Gang 12 for supposedly having another job. Keefe continueD to have another income from JTC, not another job, and the Rules Committee members knew this.

In March, 2003, the Rules Committee held another meeting. Upon information and belief, the Rules Committee did this after being advised that it could not had a meeting without notifying Keefe. This time the Committee voted 5 to 3 to put Keefe back in Gang 10 after a 60 day suspension. Again the supposed rationale was that Keefe had another job with JTC.

The Rules Committee held a third meeting later in March, 2003. Keefe was not given any notice of this meeting. Upon information and belief this meeting was called at a time when persons who had voted previously for Keefe would be out of town. The Rules Committee against suspended Keefe for 6 months and put him back in Gang 12.

Members of the Rules Committee, including the current Chairman of the Rules Committee and his relatives, have other jobs and incomes while still enjoying the benefits of Gangs 1-9.

Other Union members have other jobs and incomes while still enjoying the benefits of Gangs 1-9.

The Rules Committee suspended Keefe and put him back in Gang 12 in retaliation for Keefe having brought suit against the Local 805, Local 800 and Local 799 to force them to accept his application for membership and pay for his damages.

The Rules Committee disciplined Keefe without serving him with written specific charges, giving him a reasonable time to prepare his defense, and affording him a full and fair hearing.

Keefe has been damaged financially by being suspended and by being put back in Gang 12. While suspended Keefe lost all the wages he had been earning in Gang 10. After his suspension and while Keefe was back in Gang 12, then Gang 11, Keefe lost wages because he had less work opportunities than he would have had had he been in Gang 12.

**4.     STATEMENT OF FACTS TO BE SUBMITTED TO THE JURY**

   a.   Plaintiff Stephen Keefe resides in Green Harbor, Massachusetts.

   b.   Defendant Local 805, International Longshoremen's Association, AFL-CIO (hereinafter known as "Local 805") is a labor organization headquartered in East Boston, Massachusetts.

   c.   Defendant Local 800, International Longshoremen's Association, AFL-CIO (hereinafter known as "Local 800") is a labor organization headquartered in South Boston, Massachusetts.

   d.   Defendant Local 799, International Longshoremen's Association, AFL-CIO (hereinafter known as "Local 799") is a labor organization headquartered in Charlestown, Massachusetts.

   e.   Keefe has been a member of the International Longshoremen's Association ("ILA") over the past 23 years.

   f.   Beginning in May, 1998, Keefe reported to the Local 805 hiring hall for dispatch as a fill-in Longshoreman at the lower end of the seniority roster.

   g.   On or about January 15, 2000, Local 805 accepted Keefe's application for membership.

   h.   The ILA Hiring Hall for the port of Boston, Massachusetts, is operated jointly by Local 805, Local 800 and Local 799 by a Rules Committee that has a total of nine members, three members from each of the three Locals.

   i.   On or about January 15, 2000, the Rules Committee, placed Keefe in Gang 12.

   j.   At all relevant times there was a gang system at the Hiring Hall. Gang 12 is the

       lowest and last gang dispatched from the Hiring Hall. Gang 12 by definition consisted of "two jobbers," that is, those Longshoremen who at the same time held second jobs and who did not work exclusively at the Longshore craft.

k.    On or about October 1, 2000, the Rules Committee placed Keefe in Gang 11.

l.    On or about February 1, 2001, Keefe, brought suit in United States District Court, District of Massachusetts, against Local 805, Local 800 and Local 799, C.A. No. 01-10194, alleging, <u>inter alia</u>, that by not accepting Keefe's application for membership on or near August 10, 1998, the Locals breached Article XV of the ILA Constitution and caused Keefe to lose substantial income and benefits.

m.    In October, 2002, Keefe move into Gang 10.

n.    On January 7, 2003, Keefe was deposed by counsel for the Local 805, Local 800 and Local 799 in the above referenced case.

o.    In February, 2003, the Rules Committee held a meeting about Keefe's Gang status. he Rules Committee suspended Keefe for six months and put him back in Gang 12 for supposedly having another job.

p.    In March, 2003, the Rules Committee held another meeting. This time the Committee voted 5 to 3 to put Keefe back in Gang 10 after a 60 day suspension.

q.    The Rules Committee held a third meeting later in March, 2003. The Rules Committee against suspended Keefe for 6 months and put him back in Gang 12.

**5.    CONTESTED ISSUES OF FACT**

a.    Whether the Rules Committee suspended Keefe for 6 months and put him back in

        Gang 12 in retaliation for Keefe having brought suit against the Local 805, Local 800 and Local 799.

  b.    Whether the Rules Committee disciplined Keefe without serving him with written specific charges, giving him a reasonable time to prepare his defense, and affording him a full and fair hearing.

  c.    Keefe's damages.

**6.    JURISDICTIONAL QUESTIONS**

None

**7.    ISSUES OF LAW**

None

**8.    REQUESTED AMENDMENTS TO THE PLEADINGS**

None.

**9.    ADDITIONAL MATTERS**

None.

**10.    PROBABLE LENGTH OF TRIAL**

Three to five days.

11. **PLAINTIFF'S WITNESSES (ALL FACTUAL)**

    a.    Stephen Keefe
           Post Office Box 726
           Green Harbor, Massachusetts

    b.    Anthony Benedetti, Esq.
           Committee for Public Counsel Services
           44 Bromfield Street
           Boston, Massachusetts

    c.    Brendan Lee
           152 Storrs Avenue
           Braintree, Massachusetts 02184

    d.    Paul F. McGaffigan
           42 Harvard Street
           Charlestown, Massachusetts

    e.    Thomas McGurty
           175 Governors Ave.
           Medford, Massachusetts

    f.    Joseph J. Picard
           134 Porter Street
           Melrose, Massachusetts

    g.    William Sullivan
           26 Springhill Road
           Framingham, Massachusetts 01701.

12. **DEPOSITIONS OR INTERROGATORIES TO BE OFFERED AT TRIAL**

Plaintiff may offer into evidence answer to Interrogatory No. 12.

13. **JURY INSTRUCTIONS, SPECIAL VERDICT FORMS AND VOIR DIRE QUESTIONS**

Plaintiff will be separately filing these.

14. **MOTIONS IN LIMINE**

No motions in limine regarding evidentiary issues are anticipated at this time.

**15.   DAMAGES**

Plaintiff is unaware of any special issues regarding damages. As stated above, while suspended Keefe lost all the wages he had been earning in Gang 10. After his suspension and while Keefe was back in Gang 12, then Gang 11, Keefe lost wages because he had less work opportunities than he would have had had he been in Gang 12.

                                            Stephen Keefe
                                            By his attorney

                                            */s/ Scott A. Lathrop*
                                            _____
                                            Scott A. Lathrop, Esq.
                                            Scott A. Lathrop & Associates
                                            122 Old Ayer Road
                                            Groton, MA 01450
                                            (978) 448-8234
                                            BBO No. 287820

Dated:  November 13, 2007

Certificate of Service

I, Scott A. Lathrop, hereby certify that on this date I have electronically filed the foregoing Pre-Trial Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all other Attorneys of Record.

*Scott A. Lathrop*

_____
Scott A. Lathrop

Dated: November 13, 2007