UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11340 DPW

| | |
|---|---|
| STEPHEN KEEFE,<br>    Plaintiff<br><br>v.<br><br>LOCAL 805, INTERNATIONAL<br>LONGSHOREMEN'S ASSOCIATION, AFL-CIO,<br>LOCAL 800, INTERNATIONAL<br>LONGSHOREMEN'S ASSOCIATION, AFL-CIO,<br>and LOCAL 799, INTERNATIONAL<br>LONGSHOREMEN'S ASSOCIATION, AFL-CIO,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' LOCAL 805, 800, 799, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO's PRETRIAL CONFERENCE MEMORANDUM

I.  **TRIAL COUNSEL**

   A. COUNSEL FOR PLAINTIFF

      Scott A. Lathrop, Esq.
      Scott A. Lathrop & Associates
      122 Old Ayer Road
      Groton, MA 01450
      (978) 448-8244

   B. COUNSEL FOR DEFENDANTS

      Michael L. Mahoney
      Mullen & McGourty
      52 Temple Place, 4th Floor
      Boston, MA 02111
      (617) 338-9200

II. **JURY TRIAL OR BENCH TRIAL**

   The case is to be tried before a jury.

III.  **SUMMARY OF DEFENDANT'S EVIDENCE**

Plaintiff, hereinafter "Keefe", was transferred to Local 805, an International Longshoremen's Association Local, in January of 2000. His transfer to the Defendant Local was the subject of a civil action brought in this court by Keefe in 2001. A final order of judgment has been filed in that case, hereinafter "the 2001 litigation." Therefore, the Defendant intends to object to any attempt by the Plaintiff to enter the facts of that case into these proceedings on the grounds that they are irrelevant and the concept of res judicata applies.

Upon his transfer to Local 805, the ILA Hiring Hall for the port of Boston, Massachusetts, governed Keefe's union-gang placement. The ILA Hiring Hall for the Port of Boston was operated jointly by Local 805, 800, and 799 by a Rules Committee composed of nine members, three from each Local. Following Keefe's initial transfer to Local 805, the Rules Committee placed Keefe in Gang 12. Gang 12, the lowest and last gang dispatched from the Hiring Hall, consisted primarily of "two jobbers", i.e. Longshoremen who held second jobs and did not work exclusively at the Longshore trade. Any union member that wished to move from Gang 12 to Gang 11 (or higher), must sign a pledge sheet and appear before the Rules Committee with sufficient proof that they were working exclusively at the craft of Longshoremen.

On May 25, 2000, Keefe signed the Union Pledge Sheet, in which he agreed to work exclusively as a longshoreman, and acknowledged that he had received and was subject to all of the Hiring Hall work rules. In addition to signing the pledge, the Rules Committee received a letter from the President of JTC indicating that Keefe was employed on a casual basis as a longshoreman by JTC. Following Keefe's signing of the pledge, in October of 2000, the Rules Committee placed Keefe in Gang 11.

On February 6, 2002, counsel of Locals 805, 800, and 799 deposed Keefe in the 2001 litigation. At this deposition, Keefe admitted that on May 24, 2000, the date that the President of

2

JTC wrote the letter to the Rules Committee on Keefe's behalf, that Keefe was still doing other work in addition to working as a longshoreman for JTC. Nonetheless, subsequent to the February 2002 deposition, in October 2002, Keefe was moved into Gang 10. At this second deposition, Keefe admitted that between May 24, 2000 and January 7, 2003 he remained on the JTC payroll for assignments other than longshore work. Keefe also admitted that as of January 7, 2003, he continued to receive health insurance from JTC. Furthermore, Keefe's W-2s indicated that Keefe was on the JTC retirement plan, and that he reported a total amount of gross wages of $283,704.79 received from JTC for the years 2000 through 2003.

After learning of Keefe's additional and ongoing employment with JTC, at the end of January 2003, the Rules Committee notified Keefe that it would be conducting a hearing for Keefe to show cause as to why he should not be suspended and placed into Gang 12 for violation of Hiring Hall rule #36. The summons detailed the specific charges against Keefe, the purpose of the hearing, and the time, date, and location of the hearing. At the May 8, 2006 deposition, Keefe admitted that he received the above-mentioned summons. Due to Keefe's absence at the February 6, 2003 hearing, and thus his failure to show cause, the Rules Committee voted to suspend Keefe for six months, upon which he would then be placed in Gang 12. On February 16, 2003, the Rule Committee sent via certified mail, the suspension letter and summons to Keefe. A certified mail receipt indicates that Keefe received and signed for the above-mentioned suspension letter and hearing summons on February 18, 2003.

Keefe attended the March 5, 2003 hearing, at which the Rules Committee voted to reinstate Keefe into Gang 10, conditioned on Keefe supplying the Rules Committee with additional proof that he was working exclusively as a longshoreman. On March 12, 2003, Keefe was mailed a third summons, ordering him to appear at the March 20, 2003 hearing, where he was to supply any relevant paperwork indicating that he was currently working exclusively as a longshoreman. Due to Keefe's failure to supply the Rules Committee with any documentation to

3

prove he was working exclusively as a longshoreman at the March 20, 2003 hearing, the Rules Committee voted to reinstate Keefe's suspension through August 6, 2003.

Upon the conclusion of Keefe's six-month suspension, he was reinstated and placed into Gang 12 on August 6, 2003, and then placed in Gang 11 on August 10, 2003. Prior to the initiation of this lawsuit, the only form of protest Keefe had made to the Rules Committee's suspension was through a letter sent to ILA President Bowers from Keefe's attorney on April 7, 2003. In response to this letter, President Bowers wrote Attorney Lathrop a detailed letter that explained Keefe's violation of the Hiring Hall Rules, the three hearing notices that were mailed to Keefe, and the Committees subsequent investigation and hearings conducted in regard Keefe's violation.

Keefe failed to seek employment during his suspension even though he was physically capable of laboring. Keefe further neglected to seek employment after his suspension period ended and continued to be unemployed for the remainder of 2003. Keefe has supplied no excuse for his failure to obtain employment during this period of time. Keefe collected unemployment compensation during the period this period of time.

IV. STATEMENT OF FACTS TO BE SUBMITTED TO THE JURY

1. On or about January 15, 2000, Local 805 accepted Keefe's application for membership.
2. The ILA Hiring Hall for the port of Boston, Massachusetts, is operated jointly by Local 805, Local 800 and Local 799 by a Rules Committee that has a total of nine members, three members from each of the three Locals.
3. On or about January 15, 2000, the Rules Committee, placed Keefe in Gang 12.
4. At all relevant times there was a gang system at the Hiring Hall. Gang 12 is the lowest and last gang dispatched from the Hiring Hall. Gang 12 by definition consisted of "two jobbers," that is, those Longshoremen who at the same time held second jobs and who did not work exclusively at the Longshore craft.

4

5. On or about October 1, 2000, the Rules Committee placed Keefe in Gang 11.

6. On or about February 1, 2001, Keefe, brought suit in United States District Court, District of Massachusetts, against Local 805, Local 800 and Local 799, C.A. No. 01-10194, alleging, inter alia, that by not accepting Keefe's application for membership on or near August 10, 1998, the Locals breached Article XV of the ILA Constitution and caused Keefe to lose substantial income and benefits.

7. In October, 2002, Keefe move into Gang 10.

8. On January 7, 2003, Keefe was deposed by counsel for the Local 805, Local 800 and Local 799 in the above referenced case.

9. In February, 2003, the Rules Committee held a meeting about Keefe's Gang status. he Rules Committee suspended Keefe for six months and put him back in Gang 12 for supposedly having another job.

10. In March, 2003, the Rules Committee held another meeting. This time the Committee voted 5 to 3 to put Keefe back in Gang 10 after a 60 day suspension.

11. The Rules Committee held a third meeting later in March, 2003. The Rules Committee against suspended Keefe for 6 months and put him back in Gang 12.

V. CONTESTED ISSUES OF FACT

1. The Plaintiff was not retaliated against by the Defendants.

2. The Plaintiff was granted his due process rights prior to his suspension.

3. The Plaintiff failed to mitigate his damages by neglecting to seek employment during the period of his suspension and the remainder of 2003.

VI. JURISDICTIONAL ISSUES

None.

VII. ISSUES OF LAW

5

A.   Damages

The Plaintiff has the duty to mitigate his damages and any damages awarded by a jury in this trial must take into account the degree to which Plaintiff failed to seek replacement employment during his six month suspension. Further, Plaintiff collected unemployment compensation during his suspension. The law is unsettled regarding whether or not unemployment compensation should be deducted from an award of compensatory damages. In *NLRB v. Gullet Gin,* the Court found that the National Labor Relations Board did not abuse its discretion by refusing to deduct from a back pay award the amount of unemployment compensation collected by the employee. 340 U.S. 361, (1951). However, the language of that opinion does not specifically prohibit a court from considering unemployment compensation as an offset to a compensatory damages award.

The issue of deduction of unemployment compensation from damage awards has come up several times in the area of Title VII Civil Rights Actions. In favor of deducting the amount received by an employee through unemployment compensation, courts have argued that, "a double recovery is not necessary to make the plaintiff whole." *Thurber v. Jack Reilly's Inc.*, 521 F.Supp.238, 243 (1981). However, other courts have argued that deducting the amount of unemployment benefits would make the employer more than whole. *Toro v. Sanchez*, 141 F.Supp.2d. 195, 199 (2001).

The law in this area is not settled and it is a reasonable conclusion that the Supreme Court left it open to the district court, within its discretion, to decide that allowing a Plaintiff to recover damages without an offset for unemployment compensation collected would result in an unfair windfall for the Plaintiff.

VIII. **REQUESTED AMENDMENTS TO THE PLEADINGS**

None.

IX. **ADDITIONAL MATTERS**

None.

X. **PROBABLE LENGTH OF TRIAL**

The trial of this matter is expected to last between three and five days.

XI. **DEFENDANTS' WITNESS LIST (ALL FACTUAL)**

1. John Bowers, President or his designee
   International Longshoremen's Association
   17 Battery Place, Suite 930
   New York, NY 10004-1261

2. Timothy Keefe—President of John T. Clark & Sons

3. Brendan Lee—ILA member suspended for Rule 36 violation
   152 Storrs Avenue
   Braintree, MA 02184

4. Michael McEvoy, member suspended for Rule 36 violation

5. Paul F. McGaffigan—ILA member, member of ILA Rules Committee
   42 Harvard Street
   Charlestown, MA 02129

6. Thomas McGurty—ILA member, former member of Gang 12
   175 Governors Avenue
   Medford, MA 02155

7. Jack McLaughlin, member suspended for Rule 36 violation

8. Daniel O'Brien, member suspended for Rule 36 violation

9. Joseph J. Picard—ILA member, member of ILA Rules Committee
   134 Porter Street
   Melrose, MA 02176

10. William Sullivan—ILA member, member of ILA Rules Committee
    26 Springhill Road
    Framingham, MA 01701

XII. **DEPOSITIONS OR INTERROGATORIES TO BE OFFERED AT TRIAL**

7

      a. Deposition of Plaintiff (2/6/02)
        i. Page 53, Lines 7-10
      b. Deposition of Plaintiff (1/7/03)
        i. Pages 10-11
      c. Deposition of Plaintiff (5/2/06)
        i. Page 39, Lines 2-6
        ii. Page 39, Lines 8-11
        iii. Page 41, Lines 18-24
        iv. Page 42, Lines 1-18
        v. Page 43, Lines 5-17
        vi. Page 94, Lines 15-24
        vii. Page 95, Lines 1-5
        viii. Pages 106-108
        ix. Page 121, Lines 16-24
        x. Page 117, Lines 16-24
        xi. Page 118, Lines 1-15

The Defendants reserve the right to supplement this list.

## XIII. JURY INSTRUCTIONS AND VOIR DIRE QUESTIONS

    A. Jury Instructions

        Defendant has filed jury instructions separately.

    B. Proposed interrogatories

        None.

    C. Voir dire questions

        Defendant has filed the voir dire questions separately.

## XIV. MOTIONS IN LIMINE

No motions in limine regarding evidentiary issues are anticipated at this time.

## XV. DAMAGES

The Plaintiff failed to obtain work during his suspension or during any period of 2003 after his suspension period had ended. Plaintiff's damages should be limited as a result of his failure to mitigate those damages by obtaining alternative employment. These damages for lost compensation must be proved by the Plaintiff based on a solid evidentiary foundation and not on a speculative comparison of wages earned by other individuals during the period of time in question.

Further, any final amount of damages determined appropriate should be reduced by the amount of unemployment compensation received by the Plaintiff during the suspension period.

Failure to reduce an award of damages on account of Plaintiff's failure to mitigate and receipt of unemployment compensation would result in an unfair windfall for the Plaintiff.

Finally, the issue of the hours that the Plaintiff worked, in 2002 and 2003, has been previously decided by this Court. Hence, res judicata applies to these issues. The Court found that the Plaintiff worked a total of 705 hours in 2002 and 227.75 hours in 2003. [See Memorandum and Order, Civil Action No. 01-10194-DW, p. 32 (2007)]

Dated: November 13, 2007

Respectfully submitted,
The Defendant,
By its attorney,

_____
Michael L. Mahoney, Esquire
BBO#: 557562
Mullen & McGourty
52 Temple Place
Boston, MA 02111
Telephone: (617) 338-9200