UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEPHEN KEEFE,                    )
    Plaintiff,              )
                         )    Case No. 01-10194-DPW
                         )
v.                                )            and
                         )
                         )    Case No. 04-11340-DPW
LOCAL 805, LOCAL 800 AND          )
LOCAL 799 INTERNATIONAL           )
LONGSHOREMEN'S ASSOCIATION,       )
AFL-CIO, INTERNATIONAL, INC.,     )
    Defendants              )

MEMORANDUM AND ORDER
August 13, 2008

Plaintiff Stephen Keefe brought two separate lawsuits against Local 805, Local 800, and Local 799 of the International Longshoremen's Association (collectively "defendants"). In both cases Keefe prevailed modestly at trial on certain claims but was unsuccessful on others. Through motions brought pursuant to Fed. R. Civ. P. 54(d)(2), Keefe seeks attorney's fees under the substantial benefit doctrine. The defendants assert that the substantial benefit doctrine does not apply and even it did Keefe is not entitled to the attorney's fees he is seeking because he was only partially successful in the two cases. I conclude that Keefe is entitled to attorney's fees but that the awards requested must be reduced to account for his limited success.

# I. STATEMENT OF FACTS

### A.   The 2001 Case

In the docket styled as 01-10194-DPW, Keefe brought a four count complaint against Local 805, 800, and 799 of the ILA (the "2001 Case").   In Counts II, III, and IV, Keefe claimed that each of the three local unions violated § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).   I granted summary judgment to the defendants on these three counts.   *Keefe v. Locals 805, 800, and 799, Int'l Longshoremen's Ass'n, AFL-CIO*, No. 01-10194-DPW, 2007 WL 2461044, at *10 (D. Mass. Aug. 23, 2007).   In Count I, Keefe alleged that Local 805 breached Article XV of the ILA Constitution by failing to approve his requested transfer from Local 1947.   Keefe sought damages for lost work opportunities he sustained in connection with the alleged breach. Following a bench trial, I concluded that Keefe had proven that Local 805 breached Article XV of the ILA Constitution in violation of § 301(a) of the LMRA and consequently awarded him $1,147.50 in lost wages and $42.50 in retirement benefits.   *Id.* at *15.   He requests $25,917.50 in attorney's fees in the 2001 case.

### B.   The 2004 Case

In the docket styled as 04-11340-DPW, Keefe brought a separate action (the "2004 Case") against Locals 805, Local 800, and Local 799 alleging defendants breached the ILA's Constitution

2

and Bylaws and violated the Labor-Management Reporting and
Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. 411(a)(4) and 29
U.S.C. 529.  Specifically, Keefe alleged that the defendants
illegally retaliated against him for filing the 2001 lawsuit by
suspending him and moving him back to Gang 12 from Gang 10.
Additionally, Keefe claimed the defendants failed to provide him
with adequate notice and opportunity to be heard before he was
suspended.  I denied the defendants' motion for summary judgment
on all claims.  *Keefe v. Local 805, Int'l Longshoremen's Ass'n,
AFL-CIO, Local 800, Int'l Longshoremen's Ass'n, AFL-CIO, Local
799, Int'l Longshoremen's Ass'n, AFL-CIO*, No. 04-11340-DPW, 2007
WL 2461045, at *8 (D. Mass. Aug. 23, 2007).  Following trial, the
jury found that the defendants had not illegally retaliated
against Keefe.  However, the jury did find that Keefe had not
been provided with proper procedures in the defendants' decision
to suspend him; as to that claim the jury awarded Keefe one
dollar in nominal damages.  He seeks $26,980.50 in attorney's
fees in the 2004 case.

## II. DISCUSSION

Under the American rule regarding attorney's fees, each
party pays its own attorney's fees regardless of the outcome in
the litigation.  *Key Tronic Corp. v. United States*, 511 U.S. 809,
814 (1994).  There are, however, various exceptions to the
American rule.  The "substantial benefit exception" allows

attorney's fees to be awarded when a plaintiff's successful claim provides benefit to an ascertainable group not part of the litigation.  1 M. Derfner & A. Wolf, Court Awarded Attorney Fees §3.01[1] (2007).  Keefe asserts that his claims regarding improper union procedures fit within this exception.

A.    *The Substantial Benefit Exception*

The Supreme Court laid the foundation for the substantial benefit exception in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).  There the Court held, in the context of a shareholder derivative suit, that a plaintiff could recover attorney's fees when a lawsuit confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them."  *Id.* at 5.  In *Hall v. Cole*, 412 U.S. 1 (1973) the Supreme Court extended this doctrine to the "union democracy" context.  *Id.* at 8.  The Supreme Court also explained the basis for this equitable remedy is "not because of any 'bad faith' of the defendant but, rather, because '[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.'"  *Hall v. Cole*, 412 U.S. at 6 (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. at 392).

4

As the Supreme Court held in *Mills* and reiterated in *Hall*, a plaintiff must establish three elements in order to satisfy the substantial benefit exception.  First, the litigation must have resulted in a "substantial benefit."  *Id.* at 5.  Second, an "ascertainable class" must be the beneficiary of the plaintiff's successful litigation.  *Id.*  Finally, the court must have jurisdiction so as to be able to spread the costs proportionately among the beneficiaries.  *Hall v. Cole*, 412 U.S. at 5; *see also* 1 M. Derfner & A. Wolf, Court Awarded Attorney Fees §3.05[1] (2007).  I will address each element separately for the 2001 Case and the 2004 Case.

1.    Substantial Benefit

The Supreme Court directly addressed the issue of what constitutes a substantial benefit in *Mills* and *Hall*.  In the shareholder derivative suit context, the Supreme Court explained a "substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest."  *Mills v. Electric Auto-Lite Co.*, 396 U.S. at 396 (quoting *Bosch v. Meeker Cooperative Light & Power Assn.*, 257 Minn. 362, 366-67 (1960)).

In *Hall v. Cole*, the Supreme Court addressed the substantial

5

benefit issue in the context of union democracy and concluded "there can be no doubt that, by vindicating his own right of free speech guaranteed by [§] 101(a)(2) of Title I of the LMRDA, [plaintiff] necessarily rendered a substantial service to his union as an institution and to all of its members." 412 U.S. at 8. As I will discuss, these general principles have been applied to a number of union cases by lower courts.

a. The 2001 Case

Keefe's successful claim for compensation in the 2001 Case conferred a substantial benefit upon the union. Courts have found that a successful claim that provides a labor union an "incentive to change" illegal practices constitutes a substantial benefit. *Erkins v. Bryan*, 785 F.2d 1538, 1549 (11th Cir.), *cert. denied*, 479 U.S. 961 (1986). In this case, Keefe's successful claim enforces the rights of union members to transfer locations. This provides union members two distinct benefits. First, it deters the union for violating member's rights in the future. *Rodonich v. Senyshyn*, 52 F.3d 28, 33 (2d Cir. 1995); *see also Hall v. Cole*, 412 U.S. at 8 ("[T]o the extent that . . . lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.'") (quoting *Yablonski v. United Mine Workers of America*, 466 F.2d 424, 431 (D.C. Cir. 1972)).

6

Second, Keefe's successful claim "dispels the 'chill' cast upon the rights of others" who may otherwise not invoke their right to transfer locations. *Hall v. Cole*, 412 U.S. at 8. Accordingly, I conclude as a general proposition that Keefe's successful claim for compensatory damages under § 301 of the LMRA provided a substantial benefit to the members of the union.

  b.  The 2004 Case

  In the 2004 Case, Keefe prevailed on his claims alleging violations of Title I of the LMRDA. "Title I of the LMRDA—the 'Bill of Rights of Members of Labor Organizations'—was specifically designed to promote the full and active participation by the rank and file in the affairs of the union, and . . . the rights enumerated in Title I were deemed vital to the independence of the membership and the effective and fair operation of the union as the representative of its membership." *Hall v. Cole*, 412 U.S. at 7-8 (internal quotations and citations omitted). As a general proposition, Keefe's successful claims provided a substantial benefit to the other union members because they reinforced their right to, and provided a deterrent against violations of, various due process procedures before a union could suspend a member. *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994) (explaining that attorney's fees were appropriate "because the liability verdict recognized the 'deprivation of the plaintiffs' due process rights' by the union,

7

and thus was 'of benefit to the union and its membership regardless of the amount of provable damage to the plaintiffs'") (quoting *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 749 F.2d 1000, 1007 (2d Cir. 1984)); *McCafferty v. Local 254, Service Employees Int'l Union, AFL-CIO*, 186 F.3d 52, 60 (1st Cir. 1999) (concluding plaintiff conferred a substantial benefit upon his union because his litigation gave union members access to employer information that "advanced the equal rights of union members to pursue union office"); *Stein v. Mutuel Clerks' Guild of Massachusetts, Inc*., 560 F.2d 486, 491-92 (1st Cir. 1977) (finding a substantial benefit when plaintiff successfully sued union for failure to provide a fair hearing prior to his expulsion from the union).

The fact that Keefe was awarded only nominal damages does not necessarily change this conclusion.  In a somewhat similar case, the Second Circuit made clear that a plaintiff does not need to recover compensatory damages for the litigation to provide a substantial benefit to the union.  *Cruz v. Local Union No. 3*, 34 F.3d at 1159 ("[A] union member, in a suit against the union brought pursuant to the Labor-Management Reporting and Disclosure Act of 1959, need not recover compensatory damages from the union in order to be entitled to a fee award.") (internal citations omitted).  Accordingly, I conclude the first element of the substantial benefit doctrine is met for both cases.

2.   Ascertainable Class Of Beneficiaries

The "ascertainable class" requirement is usually met in union cases because the ascertainable class consists of the members of union.  *See Hall v. Cole*, 412 U.S. at 8-9.  Because both cases involve a union member challenging a union's procedures there is an ascertainable class of beneficiaries for Keefe's claims: the other union members.  Consequently, the second element is met for both cases.

3.   Jurisdiction To Apportion Costs

The final requirement of the substantial benefit doctrine is that "the court's jurisdiction over the subject matter of the suit makes possible as award [of attorney's fees] that will operate to spread the costs proportionately" among the beneficiaries of the litigation.  *Mills v. Electric Auto-Lite Co.*, 396 U.S. at 394.  In both cases the jurisdiction to apportion requirement is met because the defendants were unions.  *Hall v. Cole*, 412 U.S. at 8-9.  Because "absent union members [are] the beneficiaries of the suit, and a fee award against the union would shift the costs of the action to those union members," 1 M. Derfner & A. Wolf, Court Awarded Attorney Fees §3.05[1] (2007), apportionment flows from the subject matter jurisdiction over the cases.

4.   Conclusion

Keefe has established that the three elements of the substantial benefit exception are met in both cases.  The next

issue to consider is whether the award of attorney's fees Keefe

seeks should be reduced, or possibly even eliminated altogether,

as a result of Keefe's modest recovery and pursuit of several

unsuccessful claims.

> B.    *Reduction In Claimed Attorney's Fees Because Of Partial*
>       *Success*

The defendants argue that Keefe's attorney's fees award

should be reduced to account for his partial success in both the

2001 Case and the 2004 Case.  Specifically, the defendants claim

that a full award is not appropriate because three of Keefe's

four claims were dismissed prior to trial in the 2001 Case and

the jury found against Keefe in his retaliation claims in the

2004 Case.[1]  The defendants rely exclusively on *Hensley v.*

*Eckerhart*, 461 U.S. 424 (1983), to support their position.

In *Hensley*, the plaintiff brought several claims against the

defendant.  *Id.* at 426-27.  The plaintiff prevailed on one claim

but the other claims were dismissed prior to trial.  *Id.* at 427.

After trial, the plaintiff filed a request for attorney's fees

pursuant to 42 U.S.C. § 1988.  *Id.* at 428.  The issue in *Hensley*

was "whether a partially prevailing plaintiff may recover an

attorney's fee for legal services on unsuccessful claims." *Id.*

at 426.  In answering this question, the Supreme Court outlined

the framework district courts should use when assessing the

---

[1]The defendants only made this argument expressly with
regard to the 2004 Case, but I will consider its application to
the 2001 Case as well.

10

amount of attorney's fees to be awarded to a partially successful
plaintiff. *Id.* at 433-37. The Supreme Court noted that the
proper starting point is to determine a "reasonable fee" which is
obtained by multiplying "the number of hours reasonably expended
on the litigation . . . by a reasonable hourly rate." *Id.* at
433.

After describing how to make the initial lodestar
calculation, the Supreme Court then addressed the details of fee
adjustment. The Supreme Court observed that there are several
distinguishable kinds of situations where a plaintiff prevails on
some claims, but is unsuccessful on others. *Id.* at 434-36. If
the plaintiff's unsuccessful claims are based on different facts
and legal theories, then the plaintiff is not entitled to legal
fees with respect to the unsuccessful claims. *Id.* at 434-35. In
other situations, the "plaintiff's claims for relief will involve
a common core of facts or will be based on related legal
theories." *Id.* at 435. When a common core is involved, then the
claims are not properly viewed separately. *Id.* Rather, "the
district court should focus on the significance of the overall
relief obtained by the plaintiff in relation to the hours
reasonably expended on the litigation." *Id.* When a plaintiff
has achieved "excellent results" his attorney's fee award "should
not be reduced simply because the plaintiff failed to prevail on
every contention raised in the lawsuit." *Id.* By contrast, if "a
plaintiff has achieved only partial or limited success, the

11

product of hours reasonable expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" and should be reduced at the district court's discretion.  *Id.* at 436.

Because Keefe prevailed only partially in both cases, the defendants argue a reduction in attorney's fees is proper.  The defendants' argument raises two questions: does the reasoning of *Hensley* apply to attorney's fees awards sought pursuant to the substantial benefit doctrine?  And, if so, what degree of reduction, if any, is appropriate?

> 1.   Does *Hensley* Apply To Claims For Attorney's Fees Sought Pursuant To The Substantial Benefit Doctrine?

*Hensley* involved a plaintiff's statutory claim for attorney's fee pursuant to 42 U.S.C. § 1988, a federal statutory fee-shifting provision.  By contrast, Keefe's claim is premised on the substantial benefit doctrine, an equitable doctrine created by federal common law.

District court opinions have held that the reasoning in *Hensley* applies to substantial benefit cases in the labor context.  In *Guzman v. Bevona*, No. 92 Civ. 1500 (RPP), 1996 WL 374144 (S.D.N.Y. July 3, 1996), the plaintiff brought several claims against his union.  *Id.* at *1.  Some of the plaintiff's claims were dismissed prior to trial.  *Id.*  At trial, the plaintiff prevailed on his other claims, including a claim brought pursuant to LMRDA § 101(a)(2).  *Id.*  The plaintiff then

12

moved for attorney's fees, including fees incurred pursuing the unsuccessful claims, under the substantial benefit doctrine. *Id.* The defendant argued, *inter alia*, that the plaintiff should not be awarded attorney's fees for his "unsuccessful and unrelated claims." *Id.* In its analysis, the court invoked *Hensley* and explained "when a suit cannot be viewed as a series of discrete claims, it is appropriate to award full fees to a plaintiff who achieves 'excellent results' even when the 'plaintiff failed to prevail on every contention raised.'" *Id.* at *2 (quoting *Hensley v. Eckerhart,* 461 U.S. at 435). The court found the plaintiff had achieved excellent results "which warrant[ed] a full fee award." *Id.*

Similarly, in *Farkas v. Soft Drink and Brewery Workers Local 812,* No. 91 Civ. 7636 (LLS), 1996 WL 578100 (S.D.N.Y. Oct. 8, 1996), the court applied the *Hensley* framework when plaintiffs brought a series of claims against their union and other individual defendants under Title I of the LMRDA. *Id.* at *1. Following a jury trial, the plaintiffs prevailed on the Title I claims against the union and the court entered an injunction in their favor. *Id.* However, the plaintiffs were not awarded any damages and their other claims were dismissed before trial. *Id.* The plaintiffs sought attorney's fees pursuant to the substantial benefit doctrine. *Id.* at *2. In response, the defendant asserted that the attorney's fees award should not include fees for time spent on pursuing unsuccessful claims. *Id.* at *3. The

court found that the action could not be properly "viewed as a series of discrete claims because some or all of the claims were related." *Id.* at *5. Following *Hensley*, the court reduced the attorney's fees award by thirty-five percent to account for the fact that the "plaintiffs did not obtain much of the relief they sought." *Id.* at *5-6. Among other considerations, the court found it important the plaintiffs did not recover damages. *Id. at *5.*

Circuit court decisions also implicitly endorsed the *Hensley* framework by accepting the lodestar calculation as the first step in calculating attorney's fees for substantial benefit cases in the labor context. *Kinney v. Int'l Brotherhood of Electrical Workers*, 939 F.2d 690, 695-96 (9th Cir. 1991) (explaining that a district court should start with the lodestar amount and then depart upward or downward as appropriate when determining the size of an attorney's fees award); *Southerland v. Int'l Longshoremen's and Warehousemen's Union*, 845 F.2d 796, 800-1 (9th Cir. 1987) (explaining that the "starting point for an award of attorney's fees [pursuant to the substantial benefit doctrine] is to multiply the number of hours reasonably spent on the case by a reasonable hourly rate"); *see also Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983) ("A district court may adjust an award [for attorney's fees] up or down from the *objective value of legal services* rendered in order to reflect the economic benefit conferred upon the corporation or other shareholders.")

14

(emphasis added).

The case law recognizes that *Hensley*'s framework applies to fees sought in labor cases pursuant to the substantial benefit doctrine. This conclusion makes sense. While *Hensley* involved a federal statutory fee-shifting provision, nothing in the Supreme Court's analysis suggests that it would not be equally applicable for fees sought pursuant to the substantial benefit doctrine. Moreover, neither party has identified any case that has calculated attorney's fees for a partially successful plaintiff in a different manner or argued that a different calculation would be proper. Therefore, I will use the *Hensley* framework to calculate Keefe's attorney fee award.

The *Hensley* framework was further refined in *Farrar v. Hobby*, 506 U.S. 103 (1992), where the Supreme Court addressed the issue whether a partially successful plaintiff is entitled to attorney's fees when he obtains only nominal damages. In that case, the plaintiff brought a § 1983 suit against six defendants who allegedly conspired to violate his due process rights. *Id.* at 106. The plaintiff sought $17 million in compensatory and punitive damages. *Id.* Following trial, the jury concluded that one of the defendants had "committed an act or acts under color of state law that deprived Plaintiff . . . of a civil right" but found that the defendant's conduct was not the proximate cause of the plaintiff's damages. *Id.* Following an appeal and remand, the district court entered judgement against the defendant for

nominal damages.  *Id.* at 107.  The plaintiff then sought
attorney's fees pursuant to 42 U.S.C. § 1988.  *Id.*

The Supreme Court concluded that the plaintiff was a
"prevailing party" but nevertheless determined that an award for
attorney's fees was inappropriate.  *Id.* at 112, 115.  In reaching
this result, the Court, referencing *Hensley,* explained that "'the
most critical factor' in determining the reasonableness of a fee
award 'is the degree of success obtained.'"  *Id.* at 114 (quoting
*Hensley v. Eckerhart*, 461 U.S. at 436).  Because the plaintiff
sought $17 million in damages and recovered only one dollar he
failed  "to prove an essential element of his claim for monetary
relief."  *Id.* at 115.  In such a situation, "the only reasonable
fee is usually no fee at all."  *Id.*

The Supreme Court in *Farrar* also emphasized that, when a
plaintiff is seeking monetary damages, a district court is "to
give primary consideration to the amount of damages awarded as
compared to the amount sought" when determining the amount of
attorney's fees to be awarded.  *Id.* at 114 (quoting *Riverside v.
Rivera*, 477 U.S. 561, 585 (1986)).  After making this comparison,
a district court "may lawfully award low fees or no fees without"
engaging in a lodestar calculation and adjustment as described in
*Hensley.*  *Id.* at 115.  "Instead, it is enough for a court to
explain why the victory is *de minimis* and announce a sensible
decision to award low fees or no fees at all."  *Id.* at 118
(O'Connor, J., concurring) (internal quotations and citations

16

omitted).  The Court did, however, leave open the possibility
that attorney's fees might be appropriate even if a plaintiff
only recovered nominal damages.  Indeed, "[n]ominal relief does
not necessarily a nominal victory make." *Id.* at 121.  However,
"a substantial difference between the judgment recovered and the
recovery sought suggests that the victory is in fact purely
technical." *Id.*

    The First Circuit has applied the Supreme Court's teaching
in this regard.  In *Boston Children's First v. City of Boston*,
395 F.3d 10 (1st Cir. 2005), the First Circuit concluded that a
district court did not abuse its discretion by declining to award
attorney's fees when the plaintiff recovered only nominal
damages.  *Id.* at 18.  Other Circuits have also found that
attorney's fees are not necessarily appropriate when a plaintiff
recovers only nominal damages.  *Benton v. Oregon Student
Assistance Comm'n*, 421 F.3d 901, 908-9 (9th Cir. 2005)
(concluding district court's ruling that plaintiff was entitled
to recover attorney's fees after recovering $1 in nominal damages
was abuse of discretion because neither the public at large nor
the plaintiff would benefit from the plaintiff's success);
*Pouillon v. Little*, 326 F.3d 713, 717-18 (6th Cir. 2003) (finding
district court abused its discretion in awarding plaintiff
attorney's fees when he sought compensatory and punitive damages
but only recovered $2 in nominal damages); *Johnson v. City of*

*Aiken*, 278 F.3d 333, 338 (4th Cir. 2002) (holding no attorney's fees for plaintiff who recovered 35 cents in nominal damages because "when the recovery of monetary damages is the purpose of the claim, a plaintiff who receives only nominal damages has succeeded in only a technical sense"); *Pino v. Locascio*, 101 F.3d 235, 239 (2d Cir. 1996) (holding district court abused its discretion in awarding attorney's fees to plaintiff when she recovered $1 in nominal damages).

The parties have not cited, and I have not found, a case where a partially successful plaintiff won nominal damages at trial, sought attorney's fees pursuant to the substantial benefit doctrine, and the court relied on *Farrar* to determine the amount of the award. In fact, the only substantial benefit case that I have found discussing *Farrar* in this setting was *Cruz v. Local Union No. 3,* 34 F.3d 1148 (2d Cir. 1994). In that case, the plaintiffs brought suit against their union for breaching its duty of fair representation and prevailed at trial. *Id.* at 1152. The jury awarded the plaintiff's $25,969.86 in compensatory damages as a result of the breach. *Id.* Thereafter, the district court vacated the jury awards and awarded each of the plaintiffs nominal damages of one dollar. *Id.* at 1153. On appeal, the Second Circuit overturned the district court's decision with regard to the damages and reinstated the jury awards. *Id.* at 1158. The Second Circuit did not directly confront whether

18

*Farrar* should apply in a situation where a plaintiff was awarded only nominal damages because it reinstated the jury award. *Id.* at 1159 n.7. However, in dicta, the court suggested that the amount of attorney's fees awarded to a plaintiff who recovered only nominal damages at trial does not necessarily need to be reduced under *Farrar*. *Id.* ("Although we rule here that the jury award must be reinstated, we note that this Court has ruled that a union member need not recover compensatory damages in order to be entitled to attorneys fees." (referencing pre-*Farrar* decision in *Cabrera v. Jakobovitz,* 24 F.3d 372, 393 (2d Cir. 1994)).

    2    <u>Calculating And Adjusting The Lodestar Amount</u>

    a.    Calculating The Lodestar Amount

Following the Supreme Court's teaching in *Hensley*, I will first determine the "reasonable fee" and then adjust it based on Keefe's failure to prevail fully on both of his law suits. Regarding the 2001 Case, Keefe claims that his attorney spent a total of 148.1 hours prosecuting his case at a hourly rate of $175 at a total cost of $25,917.50. For the 2004 Case, Keefe asserts that his lawyer spent a total of 139.9 hours on this case at an hourly rate that ranged between $175 and $195.[2] Thus, the total attorney's fees claimed for the 2004 Case were $26,980.50. The defendants do not contend that either the amount of time

---

    [2]When the 2004 litigation began Keefe's counsel charged $175 per hour but later increased his rate to $195 per hour.

Keefe's lawyer spent working on the cases or his hourly rates were unreasonable.[3]

b.    Adjusting The Lodestar Fee For Partial Success

The next step is to determine if the attorney's fees sought should be reduced for Keefe's failure to prevail on all of his claims in two cases.  I conclude the fees should be reduced significantly in both cases because, while a substantial benefit to union members was as a general proposition at issue in both cases, the principal beneficiary was intended as a specific matter to be plaintiff himself and he was at best modestly successful.

(1)  The 2001 Case

The four claims Keefe brought in the 2001 Case were

---

[3]However, the defendants point out that the plaintiff seeks to include attorney's fees incurred during the 2001 litigation in his request for attorney's fees for the 2004 Case.  Specifically, the defendants assert that plaintiff seeks to recover $1,131 in attorney's fees for the preparation of a motion filed in the 2001 Case.  I agree that these amounts are not properly included within the scope of attorney's fees for the 2004 Case.  A plaintiff may properly seek attorney's fees for time spent seeking an attorney's fee award, *McCafferty v. Local 254, Service Employees Int'l Union, AFL-CIO*, 186 F.3d 52, 62 (1st Cir. 1999). However, it is improper for a party to seek fees in one case for work in relation to a different case.  Therefore, I will reduce the attorney's fees sought by the plaintiff by $1,131 (for a total of $25,849.50) in the 2004 Case.  However, I will correlatively increase the attorney's fees sought in connection with the 2001 Case by $1,131(for a total of $28,111.50) because these fees were not accounted for by the plaintiff in connection with that litigation.  With this adjustment, the lodestar attorney's fees sought by the plaintiff in each case will constitute reasonable rates and hours as defined by *Hensley*.

intertwined. Both Count I and Counts II, III, and IV stem from the same set of facts: Keefe's unsuccessful attempt to transfer from Local 1947 to Local 805. Thus, the facts that the claims are based on are closely connected. I will not reduce the claimed fees simply because Keefe prevailed on only one of the alternative counts.

But Keefe achieved only modest results in this litigation. In the single claim on which he ultimately prevailed, Keefe sought lost wages for sixty days but ultimately only recovered compensatory damages for six days. That result does not justify a full award of attorney's fees. Instead, because Keefe's was only partially successful in the 2001 Case, I will reduce his attorney's fees to $5,000. As will appear, I conclude that less of a reduction is appropriate in this case than in the 2004 Case because Keefe established some compensatory damages.

(2) The 2004 Case

In the 2004 Case, Keefe's retaliation and due process claims were also interrelated. The plaintiff's claims for retaliation and for denial of proper procedures stem from the same general facts: Keefe's 2001 suit and his subsequent suspension.

Keefe obtained very modest results in the 2004 litigation. While Keefe did win nominal damages and to that extent may be said to have vindicated union members rights in relation to his second claim, he did not recover compensatory damages. He also

21

was completely unsuccessful on his retaliation claims.  In light
of Keefe's mixed results at trial, a reduction in his claimed
attorney's fees is appropriate.  The relevant issue is how much
of a reduction is appropriate.

Under *Farrar*, Keefe may be said to have failed to prove an
essential element of his requested relief, namely, that he
suffered monetary damages as a result of the union's failure to
provide him with adequate due process procedures.  Given his
requests for damages, his ultimate success was extremely limited.
In situations like these where a plaintiff "asked for bundle a
got a pittance," an award of attorney's fees may not even be
appropriate.  *Farrar v. Hobby*, 506 U.S. at 120 (O'Connor, J.,
concurring).

The Supreme Court has acknowledged that the reduction of
attorney's fees is more art than science: "[t]here is no precise
rule or formula for making . . . determinations" regarding the
reduction of attorney's fees.  *Hensley v. Eckerhart,* 461 U.S. at
436.  "The district court may attempt to identify specific hours
that should be eliminated, or it may simply reduce the award to
account for the limited success." *Id.* at 436-37.  In the end,
the district court "necessarily has discretion in making this
equitable judgment." *Id.* at 437.  On the basis of Keefe's
limited indeed nominal success on a technical point, I have
decided to reduce his requested attorney's fee award to $1,000.

## III. CONCLUSION

For the foregoing reasons, I conclude that Keefe has met the elements of the substantial benefit doctrine and is entitled to attorney's fees in the amount of $5,000 for the 2001 Case and in the amount of $1,000 for the 2004 Case.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE